**COMMUNITY NATIONAL BANK IN MONMOUTH, a National Banking Association, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Capital Stock Company, Defendant.**

**No. RI–CIV–75–9.**

United States District Court,
S. D. Illinois, N. D.

Sept. 12, 1975.

Howard & Padella, Monmouth, Ill., for plaintiff.

Gilmartin, Wisner & Hallenbeck, Ltd., Chicago, Ill., James D. Mowen, Bozeman, Neighbour, Patton & Noe, Moline, Ill., for defendant.

## DECISION AND ORDER ON DE-FENDANT'S MOTION FOR SUMMARY JUDGMENT

ROBERT D. MORGAN, Chief Judge.

This is a suit for declaratory judgment, brought in the Circuit Court of the Ninth Judicial Circuit of Illinois, Warren County, and removed here by defendant under Section 1441(a) of Title 28, United States Code, based on asserted diversity of citizenship of the parties. There is no contest of jurisdiction here or over possible differences between the Illinois statute on declaratory judgments (ch. 110, Ill.Rev.Stat. § 57.1) and the fed-eral statute and rule. (28 U.S.C. §§ 2201 and 2202 and Rule 57, F.R.Civ.P.)

The problem on the merits arises over construction of the language of a so-call-ed "Bankers Blanket Bond" issued by defendant to plaintiff and in effect at the time of the loss alleged by plaintiff to be covered. An acknowledged photo-copy of said bond is attached to the Complaint. Defendant has moved for summary judgment in its favor on the theory that certain language of the bond, excluding coverage of the loss in ques-tion, is unambiguous, that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.

Plaintiff contends that there is an ambiguity in the language, founded on "grammar" and the punctuation used, and that "this case depends on resolution of conflicting inferences of facts which may be drawn from disputed terms of writing." It sought to strike the motion for summary judgment on the assertion that "there is a genuine issue of material facts," with which Motion to Strike were filed affidavits of plaintiff's attorney and of a Doctor of Philosophy college professor of English. The court has previously denied the motion to strike, has accepted the affidavits as opposing affidavits under Rule 56(c), F.R.Civ.P., and has invited and received additional briefing on the motion for summary judgment.

It is clear and undisputed that plain-tiff bank made money loans totaling some $60,000 to one George Robson Gossett, based on false information provided by the borrower, and that said Gossett was convicted in this court of the federal criminal offense of knowingly making false statements to a bank, the deposits of which are insured by the Federal De-posit Insurance Corporation (18 U.S.C. § 1014). The loans were not fully repaid, leaving a deficit of some $35,000; and it is this loss which plaintiff seeks to re-cover through the bond in question.

The printed language and grammatical structure of the bond which is involved is as follows:

### "TABLE OF LIMITS OF LIABILITY

"The Underwriter's limit(s) of liability under each Insuring Clause is as follows, subject to these Declarations and the General Conditions· of this Bond and the terms and limitations of the Insuring Clause having reference thereto and any of its endorsements:

| INSURING CLAUSES | LIMITS OF LIABILITY |
|---|---|
| (A)　DISHONESTY of Employees | $ 175,000.00 |
| (B)　ON PREMISES BURGLARY, ROBBERY, OFFICES AND EQUIPMENT LOSS OR DAMAGE, etc. | $ 175,000.00 |
| (B1)　MISPLACEMENT,　MYSTERIOUS UNEXPLAINABLE　DISAPPEARANCE Without Tellers Shortage Exclusion | $　NIL |
| (B2)　MISPLACEMENT,　MYSTERIOUS UNEXPLAINABLE　DISAPPEARANCE With Tellers Shortage Exclusion | $ 175,000.00" |

\*　　\*　　\*　　\*　　\*　　\*

(There follows in identical form other so-called Insuring Clauses designated (C) through (S), some carrying specific Limits of Liability in dollars and others marked NIL. No one argues that any of such are involved here.)

Following more than two pages of text material, none of which is directly relevant to the problem here, the bond again takes up the subject of Insuring Clauses in the following language and form:

## INSURING CLAUSES

### (A)　DISHONESTY

\*　　\*　　\*　　\*　　\*　　\*

### (B)　ON PREMISES BURGLARY, ROBBERY, ETC.

The Underwriter agrees to indemnify the Insured to any amount not exceeding the amount stated in the Declarations for this Insuring Clause, or endorsement amendatory thereto, from and against (1) any loss of Property through robbery, common-law or statutory larceny, embezzlement, burglary, theft, false pretenses, hold-up, riot, civil commotion, damage thereto or destruction thereof (including damage or destruction by vandalism or malicious mischief), whether effected with or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while such Property is or was (or is supposed to be) located or lodged or deposited within any offices or premises located anywhere, and (2) any loss, through any hazard specified in this Insuring Clause, or through the misplacement or mysterious unexplainable disappearance, of any of the items enumerated in the paragraph defining Property (Page 4), while such items are or were within any of the Insured's offices and in the possession of any customer of the Insured or of any representative of· such customer, or through robbery or hold-up while such customer or representative is actually transacting business with the Insured at an outside window or other similar facility offered to the public and attended by an Employee of the Insured, at any of the Insured's offices covered hereunder, or through robbery or hold-up during banking hours while such customer or representative is in any building or on any driveway, parking lot of similar facility maintained by the Insured as a convenience for such customers or representatives using motor vehicles provided that any such customer or representative is present in such building or on such facility for the purpose of transacting banking business with the Insured at any of the Insured's Offices covered hereunder, whether or not the Insured is legally liable for the loss thereof, provided the loss is not caused by such customer or any representative of such customer.

Offices and Equipment Loss or Damage

The Underwriter agrees to indemnify the Insured to any amount not exceeding the amount stated in the Declarations for this Insuring Clause, or endorsement amendatory thereto, against any loss of or damage to (except, in either case, by

fire) any of the Insured's offices, furnishings, fixtures, stationery, supplies or equipment, safes and vaults (including any wallet, bag, satchel or chest), caused by robbery, larceny, burglary, theft, hold-up, or attempt thereat, or by vandalism or malicious mischief, and any loss by damage (except by fire), to any of the Insured's building in which any of the Insured's offices or branches are located, caused by robbery, larceny, burglary, theft, hold-up, or attempt thereat.

This Insuring Clause does not cover—

  (a)   *   *   *   *;

  (b)   *   *   *   *;

  (c)   Loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses;

  (d)   *   *   *   *;

  (e)   *   *   *   *;

  (f)   *   *   *   *.

(Then follow individual and multiple paragraphs of text to (B1), (B2), and (C) through (S), all of which are completely irrelevant to the problem here, except as the form thereof may be some guide to interpretation of the relevant text.)

Defendant argues generally that this is not a proper case for declaratory relief because plaintiff's loss has been incurred, and it is not in peril of avoidable loss as alleged, so that an ordinary action at law on the bond is the appropriate remedy. While this may be true, it is conceded that decision on the merits in this action is within the discretion of the court; and it would appear that concern about the form of the action in the present posture of the case would be wasteful for all concerned.

Defendant's argument on the merits is that the loan exclusion clause (c) obviously and unambiguously relates to the entire "Insuring Clause (B)," and hence excludes coverage of this loss on the fraudulently obtained Gossett loans.

Plaintiff argues that because of the rules of grammar and the syntactic structure, said loan exclusion clause (c) can relate only to the immediately preceding "insuring clause" headed "Offices and Equipment Loss or Damage," leaving defendant's agreement to indemnify against "loss" through "false pretenses," as provided in the second preceding "insuring clause" headed "(B) On Premises Burglary, Robbery, etc.," not subject to such exclusion of coverage. Plaintiff offers the affidavit of Dr. Gary D. Willhardt (Ph.D. in English) that if called as an expert witness to render an opinion on the grammatical and syntactical structures of said bond, and, in particular, "Insuring Clauses B," he would testify:

"In order to assess the grammatical relationship of the exclusion sentence on page 5 under the heading 'Offices and Equipment Loss or Damage', I have analyzed Insuring Clauses B, B1, and B2 from two points of view; the total rhetorical composition of the clauses and the grammatical and syntactical structures of these clauses.

"The form of any syntactic arrangement depends upon an internal set of consistent relationships which an author puts together in order to communicate his ideas. In Clauses B, B1, and B2 the basic compositional elements are the position of related sentences, word order, and the grammatical logic which holds these sentences together. These clauses are nearly identical in syntactic and grammatical structure, the basic sentence pattern being, 'The Underwriter agrees to indemnify the Insured . . . from and against. . . . . any loss,' etc. This pattern occurs four times in these clauses and, thus, establishes a pattern of rhetorical parallelism, which in grammatical terms means they are all equal. Therefore, what is grammatically true of one clause is true of them all.

"Each Clause (B, B1, and B2) has its appropriate heading indicating its

subject. This is clearly so in Clauses B1 and B2. In my judgment, Clause B, however, is divided into two sentences (there are two headings) which are parallel in structure, but each sentence deals with different information. Clause B is thus comprised of three syntactic structures, two sentences which are the Insuring Clauses and one sentence which is an exclusion clause. The same pattern of clause followed by exclusion clause is followed in B1 and B2.

"The first point, then, is that each of these sections (i.e., Insuring Clauses B, B1, and B2) is by design parallel, grammatically and syntactically equal.

"The second problem in the construction under consideration is, to what does the exclusion sentence refer, the first or the second sentence? The sentences in B1 and B2 are each single syntactic structures (sentences) comprised of two clauses, an insuring clause and an exclusion clause. In B1 and B2 there is no doubt about the reference because in both B1 and B2 the exclusion clause has to refer to the immediately preceding insuring clause. The complication in B is that there are two headings. The paragraph under the first heading has one sentence. The paragraph under the second heading has two sentences, the first an insuring clause and the second an exclusion clause. To determine which sentence the exclusion clause refers demands that the function of 'this' be defined.

"In grammar 'this' is either a demonstrative pronoun (which points backward to a person or idea already mentioned or implied) or a pronominal adjective (which also points back to a person or idea already mentioned). However, in common usage today 'this' is often unfocused, merely vaguely referring to something previously stated or implied. The author of this sentence has used 'this' to point his sentence. In grammar, the rule is always that 'this' refers to a word, group of words, or an entire sentence immediately preceding the pronoun or adjective. This characteristic is what modern grammarians call 'near reference.' In the exclusion sentence in question, 'this' has an anaphoric (points backward) function, and, in my judgment, points to the immediately preceding Insuring Clause entitled 'Offices and Equipment Loss or Damage'.

"Also, throughout this contract, identation (sic) is used to clearly and precisely set off one condition, section, or sentence from other conditions, sections, or sentences. The exclusion sentence on page 5 under the heading 'Offices and Equipment Loss or Damage' is not indented, and therefore is the second sentence of said paragraph.

"If the exclusion sentence referred to both preceding sentences, the grammar would require that the sentence read 'These Insuring Clauses. . . .' etc., which it clearly does not.

"My specific conclusion, then, is that the exclusion sentence refers only to the immediately preceding sentence on page 5 under the heading 'Office and Equipment Loss or Damage'."

Plaintiff argues that, at the very least, these factors create an ambiguity of meaning or intention of the parties, which, even if not requiring extrinsic evidence to resolve, must be resolved in favor of the insured under the well-known principle of construing a contract strictly against the party which drafted it, particularly an insurance contract in the drafting of which the insured has no voice whatsoever, and for which the party responsible for the draftsmanship receives a premium for the undertakings it voluntarily assumes.

In spite of the obvious validity and natural appeal of these arguments as general principles of construction, it appears to this court that plaintiff is seeking to reach beyond the limits of reason in the situation at hand. To counter the argument that it is unrealistic and illogical to relate a "loan exclusion" only to office equipment and the like, plaintiff

says, in substance: "Can't those things be the subject of defaulted loans?" It may be conceded that they certainly might in a rare instance, but such loans are hardly significant in the banking business, while loaning money is the principal business of a bank. This loan exclusion is quite clearly designed to avoid the insurers picking up the credit risk of a loan made in the banking business, even though such loan, as here, turns out to have been obtained by the borrower through false pretenses. A suggestion that it could have been meant by anyone to relate only to loans of furniture, etc., seems almost unworthy of intelligent and responsible persons making such argument.

The scholarly analysis in the Willhardt affidavit demonstrates clearly how far afield even an expert may be led if he applies only certain rules of his discipline to the exclusion of others equally valid, and if he fails to reconcile his result with the sense of the subject matter. It is suggested that the clauses Dr. Willhardt identifies as "Insuring Clauses" B, B1, and B2" are, as he says, quite clearly "by design parallel, grammatically and syntactically equal," as are, with equal clarity, clauses (C) through (S), which are all carried under the major heading "Insuring Clauses" in two places in the bond, and are thus quite clearly designated as separate and equal by such letter designations. The subheading "Offices and Equipment Loss or Damage," undesignated by such a letter and thus a part of Insuring Clause B, by its clear language and context, simply makes clear that loss or damage to such physical assets caused by robbery, larceny, etc., is covered under Insuring Clause B, which insuring clause otherwise might be considered not to cover such items because of the definition of "Property" contained in the bond. This absence of letter designation quite clearly destroys the equality afforded the second sentence in "Insuring Clause B," shows it to be simply explanatory of the first sentence, as its sense implies, and justifies the use of the words "this" and "does" rather than "these" and "do" in referring to the single "Insuring Clause B."

Plaintiff argues also that since the words "This Insuring Clause does not cover . . ." do not commence a new paragraph because the first word is not indented from the margin of the column, it can only relate grammatically to the paragraph of which it is a part. It is not believed that such a grammatical error, if such it be, destroys the clear meaning of the language used and renders it ambiguous. No decided case cited by plaintiff stands for such a proposition. Certainly punctuation can tend to affect meaning otherwise unclear, but a failure to indent at the commencement of a new thought neither adds to nor substracts from the meaning of the words used.

Plaintiff also argues that summary judgment for defendant is improper because there is a question of fact whether the bond, with respect to this paragraphing by indentation, "is not the same as in prior and subsequent bonds issued by Defendant," and whether "it is not punctuated the same as the standard form drafted and issued by the Surety Association of America." Such questions of fact do exist, because we do not know whether such alleged differences do or do not exist, but that is wholly immaterial. If the meaning is clear here, as this court considers it is as a matter of law, it is of no importance that some other bond is written in some other way. Plaintiff has suggested no such bond carrying the meaning for which it here contends, but only bonds which it considers more clearly carry the meaning which the court finds here.

The question of construction here is one of law which can be decided on a motion for summary judgment. *Michigan Mutual v. Continental Casualty*, 297 F.2d 208 (7th Cir. 1961). The law of Illinois applies, and, as this court has previously found, the law of Illinois is that the rule of construction favoring the insured must yield to the requirement of a reasonable construction. *See Univer-*

*sal Underwriters v. Northwestern Insurance Co.*, 306 F.Supp. 437 (D.C.1969), and cases there cited. It seems crystal clear to this court that no reasonable construction of the bond here in question would permit plaintiff to recover on this bond the money it has failed to recover from its fraudulent borrower. The clearly-worded loan exclusion is applicable and the effort to render it inapplicable is so strained and technical as to be wholly invalid.

Accordingly, it is ordered that the defendant's motion for summary judgment is allowed and the case is dismissed with prejudice at plaintiff's cost.