FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION *et al.*, Plaintiffs-Appellants, *v.* PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 76-158

Opinion filed July 27, 1978.

ROMITI, J., dissenting.

David J. Shipman and John F. McCarthy, both of Chicago (McCarthy & Levin, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini and Frank L. Schneider, of counsel), for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Federal Savings and Loan Insurance Corporation (hereinafter FSLIC) and Esther Rothstein appeal from a summary judgment entered

in favor of the defendant, Pacific Employers Insurance Company (hereinafter Pacific).

Plaintiff FSLIC was the insured and the owner of the O'Hare Congress Motel in Franklin Park, Illinois. Plaintiff Rothstein is the assignee of the Litas Investing Company, purchaser of the motel and a named insured. On December 31, 1971, the motel was partially destroyed by fire and a claim was filed by Litas with Pacific on its policy covering the motel. The claim was paid with the exception of Litas' claim for loss of income under the policy. Hence, this action was filed. The policy issued by Pacific contained the following provision:

"COVERAGE C—LOSS OF INCOME, during the period of recovery, directly resulting from interruption of the Insured's operations at the location specified on Page 1 caused by loss under Coverage A or B. [These coverages apply to physical damage to real property and to personal property, respectively.] 'Income' is defined as the total revenue from:

(a) The net sales of goods or services, and the rental or lease of property to others; less the cost of

(b) Goods and service supplies sold, and services purchased (from other than employees) for resale which do not continue under contract."

Pacific refuses to honor Litas' claim for loss of income under the quoted provision because, it claimed, the loss to Litas did not directly result from the fire nor cause an interruption in Litas' operations on the premises. The trial court agreed with Pacific and entered its motion for summary judgment.

We reverse.

In February 1969, FSLIC sold the motel to Litas Investing Company, a New York corporation, under an installment contract that passed title to Litas upon its payment of 40 percent of the principal. On April 26, 1970, Litas leased the motel to Herbert R. Miner, pursuant to a written lease agreement that, *inter alia*, required Miner to incorporate and assign his rights and interest under the lease to O'Hare Congress Inn, Inc. (hereinafter O'Hare). The sole asset of O'Hare was its interest in the motel. It was formed for no other purpose. O'Hare provided the funds required under Miner's lease agreement with Litas. The resulting fire dried up those funds, as the lease did not provide for abatement of the rent because of the loss of income resulting from business interruption.

On September 15, 1970, Pacific issued the motel policy in question, insuring FSLIC and Litas. The policy included the loss of income provision previously cited. In May 1971, the policy was amended, adding Miner as an insured. No other amendments were included. Miner had

already assigned his interest and rights to O'Hare in which he was the major stockholder.

The monthly premium installments on the policy were paid by FSLIC through the funds supplied by Litas. The amount of the loss claimed by Litas is $102,540 based upon 10 months rent at $10,254 per month. As a result of the fire, rent was not paid Litas for 10 months. Miner and O'Hare have also filed suit against Pacific for loss of income coverage, and the matters were consolidated for purposes of discovery and trial. That suit is still pending in the circuit court of Cook County.

The plaintiffs contend that the loss of income coverage should be extended to Litas for several reasons. They argue that as a named insured, coverage should automatically be extended, and that no distinction should be (or has been) made among the named insureds for coverage claims on the motel. They argue that evidence showing a percentage of their monthly premium as allocated to the loss of income coverage estops Pacific from denying said coverage is permissible. It is also contended that at the time the policy was amended to include Miner, Pacific was aware of the relationship among the named insureds and O'Hare.

The thrust of Pacific's argument is, essentially, that Litas' claim for loss of income did not directly result from interruption of the insured's operations at the location specified in the policy and, therefore, its loss is not of the gender contemplated within the meaning of the policy. Pacific contends that the kind of loss of income contemplated within its policy is income lost by the operator of the motel as a result of the fire, *i.e.*, loss of income from rental of rooms only. Litas' "operations," according to Pacific, did not include the rental of motel rooms and is therefore not covered by the policy. Pacific also maintains that Litas lacked an insurable interest in the motel operation and thus is not entitled to loss of income coverage. They argue that the party entitled to business interruption coverage is Litas' tenant as operator of the business.

At issue is whether Litas can maintain its claim for loss of income coverage within the meaning of the policy issued by Pacific.

We hold only that Litas should be permitted to pursue its claim to trial.

■■ It is a well-settled principle that ambiguities in insurance policy provisions are resolved to favor the indemnification of the insured. (*Brady v. Highway Commissioner* (1975), 24 Ill. App. 3d 972, 975-76, 322 N.E.2d 236, 238; *Tiffiny Decorating Co. v. General Accident Fire & Life Assurance Corp.* (1973), 12 Ill. App. 3d 597, 602, 299 N.E.2d 378, 381; *Gray v. Merchants' Insurance Co.* (1906), 125 Ill. App. 370, 372-73; see generally *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193-94, 355 N.E.2d 24, 28.) The rule was stated by the court in *Gray*:

"If this is the meaning of the policy, then the parties intended to provide premiums for appellee and to avoid protecting appellant against loss of income from his building as the result of fire. On the contrary, we think the object of such a policy is to protect the owner of the property. We held in Niagara Fire Ins. Co. v. Heenan & Co., 81 Ill. App., 678, that a contract of insurance should be construed liberally in favor of protecting the assured; and in affirming that judgment, in 181 Ill., 175, the Supreme Court said: 'A contract of insurance is a contract of indemnity, and unless indemnity for the loss sustained has been reached the law will lean to that construction which carries out the purpose of such a contract and gives such indemnity.' " *Gray*, at 372-73.

The appellants contend that the terms of the policy provide indemnification for loss of rent to any of the named insureds who suffers that kind of loss. They refer to the language of Coverage C that defines income and argue that Litas' lease of the property to Miner is included within the definition of "Income." Pacific argues against that interpretation, stating that the rental of rooms was the only kind of rental contemplated in the definition above.

The parties are also in dispute as to the extent that Litas conducted "operations" on the premises sufficient to afford it coverage under the provisions of the policy. There is disputed evidence as to whether Pacific's issuing agent was aware of the nature of the relationship among Litas, Miner, and O'Hare particularly in light of the fact that at the time the policy was amended to include Miner, O'Hare had already been formed pursuant to the lease agreement between Litas and Miner. Of the $20,194 annual premium, $1974.10 was allocated to loss of income coverage as verified by Pacific. The premiums were paid from the funds supplied Litas through its leasing of the motel. Thus, a reasonable inference could be made that loss of income coverage was provided to the insured.

It has been held that a summary judgment is properly entered where there is no genuine issue as to any material fact and where the movant is entitled to judgment as a matter of law. (*Manda v. Branham* (1977), 50 Ill. App. 3d 91, 94, 365 N.E.2d 216, 218; *Freeman v. Augustine's, Inc.* (1977), 46 Ill. App. 3d 230, 236-37, 360 N.E.2d 1245, 1250.) Since the entry of summary judgment is a drastic measure to dispose of litigation, the right of the moving party to invoke the remedy must be free of any doubt. (*Mollihan v. Stephany* (1975), 35 Ill. App. 3d 101, 103-04, 340 N.E.2d 627, 629-30.) In *Mollihan*, a summary judgment was reversed where it was shown that information given to an agent of the insurance company was a matter of dispute.

■■ While there is support for the proposition that construction of an

insurance policy is a matter of law and properly decided in summary judgment (*Community National Bank v. St. Paul Fire & Marine Insurance Co.* (S.D. Ill. 1975), 399 F. Supp. 873, 878), it should not be used to preempt the right to a jury trial or the right to fully present the factual basis for a case where a material dispute may exist. (*Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1050, 340 N.E.2d 539, 542.)

> "Where doubt exists as to the right of the moving party to entry of a summary judgment, the wiser judicial policy is to permit resolution of the dispute by trial rather than by summary judgment." *Armagast v. Medici Gallery & Coffee House, Inc.* (1977), 47 Ill. App. 3d 892, 896, 365 N.E.2d 446, 449.

■■ Here, it is a matter of dispute whether Litas, a named insured, was covered for loss of income on an insurance policy covering property leased by it to Miner. The parties are also in dispute over whether certain material representations were made to agents of the insurance company regarding the insured property.

These kinds of issues are better resolved in a trial on the merits than in a summary judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for trial on the merits.

Reversed and remanded.

LINN, J., concurs

Mr. JUSTICE ROMITI, dissenting:

I respectfully dissent.

I do not disagree with the principles reiterated in the majority opinion that ambiguities in an insurance contract are strictly construed against the insurer and that a summary judgment cannot be granted when there is some issue of fact to be decided. The rule that insurance contracts are to be construed against the insurer is, however, to be applied only when the language is ambiguous (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873; *Fidelity & Casualty Co. v. Napleton Motor Sales, Inc.* (1972), 5 Ill. App. 3d 705, 284 N.E.2d 26), and the court should not create an ambiguity where none exists, and thereby make an insurer assume a liability not imposed by the insurance contract. (*Employers Mutual Casualty Co. v. Kangas* (Minn. 1976), 245 N.W.2d 873.) The language in an insurance policy is not ambiguous merely because the parties have differed as to its meaning. (*LaBonte v. Federal Mutual Insurance Co.* (1970), 159 Conn. 252, 268 A.2d 663; 13 Appleman, Insurance Law and Practice §7386 (1976).) The provision in the instant insurance contract clearly provides coverage for

only those losses *directly* resulting from the *interruption* of the insured's *operation at the location specified* caused by loss under Coverage A or B. In other words, before any loss, whether it be the reduction of the sales or the providing of services or the rental of the property to others, here specified in the policy to be motel property, is covered this loss must:

    (1) directly not indirectly be caused by

    (2) the actual interruption, of

    (3) a business operation on the insured premises

    (4) by the insured.

Even if one assumes that the business of leasing the motel to Miner was otherwise covered by the policy, without an interruption of *that* business there can be no recovery by the plaintiffs here. (*National Children's Expositions Corp. v. Anchor Insurance Co.* (2d Cir. 1960), 279 F.2d 428; 5 Appleman, Insurance Law and Practice §3120 (1976).) The plaintiffs, as they concede in their brief, are suing for the loss resulting from the interruption of their own business not Miner's. And it seems apparent at first glance that, particularly in light of the simple fact that the lease of the motel was not terminated by the fire but Miner and O'Hare were still obligated to pay rent, there is no way that the business of leasing the premises to Miner can be deemed to have been interrupted by the fire.

The majority seems to feel that some facts may be discovered to alter this interpretation. But the construction of an insurance contract presents only a question of law; it is not submissible to a jury; thus it is an issue which is appropriate for determination on summary judgment. (*Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337.) Furthermore, where, as here, the language of the policy is clear and unambiguous, the court cannot consider extrinsic evidence as to the parties' understanding of the policy provisions but must give effect to the plain and obvious import of the language used unless such construction would lead to unreasonable or absurd consequences. (*Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337; *General Casualty Co. v. Elam* (1972), 8 Ill. App. 3d 215, 289 N.E.2d 699; *Olipra v. Zambelli* (1971), 1 Ill. App. 3d 607, 274 N.E.2d 877.) Denying recovery for a business interruption loss to one who has not suffered an interruption of his business but merely a reduction of its profits is not, any more than it was in *Anchor Insurance*, an unreasonable or absurd result, particularly when it also appears clear, construing the policy as a whole, as we must, (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491; *Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 294 N.E.2d 7), that the policy was intended to cover only motel operations and not leasing operations.

Even if the policy were considered to be ambiguous so that extrinsic

evidence could appropriately be introduced, the undisputed facts as revealed in the parties' complaints and answers to interrogatories clearly show that not only is there no coverage for the loss of rental income under the policy, but that Litas never intended, after the property was leased to Miner, to be covered for any kind of loss.

The plaintiff, FSLIC, sold the property to Litas in 1969, retaining title thereto until 40 per cent of the principal was paid. FSLIC, however, while having an insurable interest in the premises, and while demanding recovery for loss of income, nowhere in its complaint claims that in fact it lost any income. Accordingly, its claim appears to be frivolous and should have been dismissed with prejudice. On April 26, 1970, Litas leased the property to Miner with the understanding that Miner would form a corporation to assume possession and assume all the terms, conditions, provisions and obligations of the lease. Miner did so. The corporation, O'Hare, as required by the lease did assume the obligation and pay the rent. The lease was to run until 1991 and was not to be terminated by fire or other destruction of the premises, in whole or in part, nor would such event entitle the lessee to any abatement of rent or otherwise affect the respective obligations of the parties thereto. In the lease, Miner agreed that the condition of the premises and his use of the property and his obligation to maintain and insure it would be the same as the lessor's under the purchase agreement with FSLIC. The contract of insurance would remain in Litas' name. However, Litas in the lease expressly assigned all of its rights, title and interest in and to the insurance contract to Miner. At this time Litas was insured by INA, the policy providing $200,000 for loss of income due to business interruption loss. On June 18, 1970, Litas, apparently acting on Miner's behalf since it had assigned all rights in the insurance to Miner, replaced the INA policy with one issued by the defendant, Pacific. The policy insured FSLIC as title holder, and Litas as contract purchaser, and covered the premises used for motel and related purposes at 3010 North Mannheim Road, Franklin Park, Illinois. The limit of liability for the coverage for loss of income again was $200,000. On May 15, 1971, an endorsement was added to the policy adding Miner as an insured. No other changes were made in the policy; in particular, although the plaintiffs are now claiming that the addition of this endorsement meant that the insurer no longer merely insured against the loss of income to the operator of the motel due to the interruption of the motel business but now also insured against any loss of rental income, the amount of the policy limits were not increased as one might expect them to be if a totally separate item had been added, and the premium was not increased although, if the plaintiffs' contentions were correct, the risk was greatly enlarged by the endorsement. The size of the premium is

relevant to the construction of the policy. *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.* (2d Cir. 1974), 505 F.2d 989; 13 Appleman, Insurance Law and Practice §7389 (1976).

At the time of the fire, only Miner and O'Hare operated the motel business. Litas did not. As Litas conceded in interrogatories, the only business it was conducting in connection with the insured property was the leasing of the entire property to Miner. This business was not conducted by Litas through the use of any office or space occupied by it at the premises or through any employees located thereon.

Apparently, Miner and O'Hare since the fire have defaulted in the payment of the rent, although they were still bound by the lease. On September 25, 1972, Litas assigned all of its rights against Miner and O'Hare for rent due or to become due to the plaintiff Rothstein. On the same day Litas also assigned to Rothstein whatever rights it had against the defendant. This latter assignment specifically provided that it in no way affected any rights or claims for loss of income Miner had under the policy. On October 9, 1972, over a week after this attempted assignment, Miner and O'Hare assigned to FSLIC (not to Litas) any claims it might have against the defendant for loss or damage to the real property. They expressly reserved to themselves any rights or claims they might have against the insurer for loss of income.

Miner and O'Hare have filed a claim against the insurer for $161,496 for loss of income. The plaintiffs here filed a claim for $102,540. Since the policy coverage is only $200,000, if the plaintiffs' claim is allowed Miner will be deprived of the coverage which the lease agreement expressly provided he should have. The court should not so liberally construe an insurance contract in favor of one insured as to deprive another insured of coverage to which it would appear he is entitled, particularly where, as here, the conduct of the two insureds reveals that they intended that the latter (Miner) and not the former (Litas) be protected by the policy. Litas, after expressly abandoning all rights to the insurance coverage in the April 26, 1970, assignment, can hardly claim that it expected to be covered under the policy, particularly at the expense of Miner and O'Hare. And the plaintiff Rothstein, as Litas' assignee after loss, has only the rights which Litas had at the time of the assignment.

It therefore seems clear that whether this court looks at the clear language of the parties or at their intent as indicated by their conduct, there was no intention on the part of Litas, Miner or Pacific that Litas be protected for the loss of rental income. Separate insurance is required to protect against the loss of rent and Litas, having failed to obtain such coverage should not now be allowed to look to this court for an expansion of the scope of coverage to afford coverage neither party bargained for.

The plaintiffs have never claimed that they should be able to recover

because Miner's failure to pay was due to the interruption of the motel business, undoubtedly because they recognized that this would not be a loss directly caused by the interruption of the business. Compare *Unijax, Inc. v. Factory Insurance Association* (Fla. App. 1976), 328 So. 2d 448, where the court recognized that the diminution in value of the stock a parent company held in its subsidiaries as a result of fire damage to the subsidiaries' property was not covered under a similar policy.

The majority has suggested that in light of the fact that Litas paid the premium (we may suppose, however, that the funds were really supplied by Miner and O'Hare) the insurer might somehow be barred from relying on the clear provision as to coverage in its policy. It may well be that the defendant is estopped to deny coverage to Miner and O'Hare or that the policy should be reformed to add O'Hare as an insured. But that is hardly relevant here in a suit where other parties are seeking to recover on the policy in conflict to the rights of Miner and O'Hare. The parties are bound by the language of the policy, unless the insurer is estopped by the conduct or unless the policy should be reformed. (*Martinez v. John Hancock Mutual Life Insurance Co.* (1976), 145 N.J. Super. 301, 367 A.2d 904.) Since the plaintiffs have only claimed on the policy and have not alleged either waiver or estoppel or sought reformation, these issues have been waived. (Ill. Rev. Stat. 1975, ch. 110, par. 43; *Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill. App. 421, 60 N.E.2d 269, *appeal denied* (1945), 389 Ill. 629; *Spence v. Washington National Insurance Co.* (1943), 320 Ill. App. 149, 50 N.E.2d 128.) Moreover it is the general rule that coverage cannot be created or extended by waiver or estoppel (*Jennings v. Bituminous Casualty Co.* (1964), 47 Ill. App. 2d 243, 197 N.E.2d 513; and see *Spence v. Washington National Insurance Co.* (1943), 320 Ill. App. 149, 50 N.E.2d 128), except where a liability insurer has undertaken the defense of an action against its insured. (*Gibraltar Insurance Co. v. Varkalis* (1970), 46 Ill. 2d 481, 263 N.E.2d 823.) For these reasons, I believe the judgment of the trial court should be affirmed.