AARON CROWELL, Plaintiff-Appellant, v. LIFE INVESTORS INSUR-
ANCE COMPANY OF AMERICA, Defendant-Appellee.

Third District   No. 3—84—0108

Opinion filed June 10, 1985.

Thomas E. McClure and Roger C. Elliott, both of Elliott & McClure, of
Bourbonnais, for appellant.

Robert W. Boyd, of Ackman, Marek, Boyd & Simutis, Ltd., of Kankakee,
for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Aaron Crowell was insured under a disability income insurance
policy by Life Investors Insurance Company of America. According to
the terms of that policy, issued January 1, 1975, in the event of Cro-
well's disability from injury or sickness, the insurer would pay the pol-
icy premiums and make payment of Crowell's mortgage obligation. On
December 1, 1978, the insurer canceled the policy, and Crowell
brought suit in the circuit court of Kankakee County alleging that the

cancellation was wrongful under the terms of the policy. The circuit court disagreed with Crowell's allegations, and granted a motion for summary judgment offered by the insurer. Crowell seeks our review of that judgment.

As stated earlier, the subject policy of insurance was issued on January 1, 1975. Thereafter, on January 25, 1977, Crowell came under the care of Dr. Harold Keegan for cervical, muscular and ligamental strain. The terms of the policy require the insured to file written proof of loss, that is, proof of disability, on claim forms furnished by the insurer. In compliance with this requirement, Dr. Keegan sent a claim form to the insurer on February 15, 1977, in which he declared that Crowell was disabled for a period of "undetermined" duration. Again on March 25, 1977, Dr. Keegan reported that Crowell's disability would continue for an "undetermined" period. Finally, on April 27, 1978, the doctor reported that he had not examined Crowell since February 28, 1978, but had referred the patient to Dr. Eugene Anderson.

During the entire period that Crowell was under Dr. Keegan's care, he received disability insurance benefits under the subject policy.

Dr. Anderson examined the insured on at least one occasion in March of 1978. Following that examination, Dr. Anderson submitted a claim form to the insurer in which he concluded that Crowell was disabled and would continue as such until September 4, 1978. Dr. Anderson also suggested that Crowell make an appointment to be examined by Dr. Jonas Mileris. The plaintiff-insured alleged that he again saw Dr. Anderson in early August and late August of 1978, but the occurrence of this is not material to the issues which subsequently arose.

Crowell's benefits continued to be paid by the insurer based upon Dr. Anderson's medical evaluation.

When Crowell telephoned the office of Dr. Mileris in August or September, he was advised that the first available appointment date was February 14, 1979. Before this appointment could be kept, Crowell was contacted by the insurer and reminded that the September 4 date set forth in Dr. Anderson's letter had passed, and if benefits were to continue, Crowell would be required to submit continuing proof of disability. Crowell allegedly advised the insurer that his next appointment was not scheduled until February, but offered to submit to an examination by a physician designated by the insurer. That examination was conducted by Dr. Luis Martinez on September 27, 1978. At that time, according to the plaintiff, the doctor advised him that he continued to be disabled, but in a written report to the insurer, Dr. Martinez stated that Crowell could be "expected to work at

some occupation that would not immediately entail \*\*\* stress loads to the upper extremities and to the neck."

The subject policy defined disability as a total inability to engage in any employment for which the insured is qualified, and since Dr. Martinez determined that Crowell could be "expected to work" at occupations with certain limitations, the insurer issued its final disability check and advised Crowell that his benefits were being terminated. Those benefits, as mentioned at the outset, included the periodic payment by the insurer of Crowell's mortgage obligation and the payment of premiums on the subject policy.

Following this notice, Crowell failed to make the premium payments due on the policy, although he alleges that agents of the insurer advised him that the company would take no further action until receiving the results of Dr. Mileris' February exam. On December 1, 1978, because of nonpayment of premiums, the insurer canceled the subject policy.

On the date previously scheduled, Crowell visited Dr. Mileris, who concluded that the plaintiff was disabled. A proof of claim, executed by the doctor, was submitted to the insurer on February 27, 1979. Another proof was submitted on April 16, 1979, and in this report Dr. Mileris stated that Crowell was most likely not able to hold employment—because of disability—during the six-month period prior to February 14, 1979. Nevertheless, the insurer, having canceled the policy in December of the previous year, refused to reinstate the policy and provide coverage. Crowell's claim was denied and the instant lawsuit commenced.

The circuit court, having before it the pleadings, affidavits, and documentary evidence which, taken together, recount in substantially uncontradicted fashion the facts of this dispute as herein set forth, granted the insurer's motion for summary judgment concluding that the subject policy was properly canceled for nonpayment of premiums. In his brief before this court, Crowell asserts that the judgment of the circuit court ignores four disputed issues of material fact.

First, Crowell argues that he did not cease to be disabled in September 1978, and that Dr. Mileris' diagnosis, filed with the insurer seven months later, substantiates this fact. Second, the plaintiff urges that the medical evaluation conducted by Dr. Martinez was an insufficient basis for terminating his benefits because the doctor failed to conduct a Naffziger test and a Sperling compression test. Third, the briefs of the appellant assert that the insured's disability benefits were wrongfully terminated, as Crowell was under the regular care and personal attendance of a physician during the relevant period as

required by the policy. Finally, Crowell contends that he complied with the policy requirements for filing proof of loss in a timely manner. In reviewing the record on appeal, and the terms of the subject policy of insurance, we concur that one or more unresolved disputes of material fact were present in the case at bar such that a motion for summary judgment should not have been granted.

■ The certificate of insurance upon which Crowell's claim is based provides for proof of loss as follows:

> "*Proofs of Loss:* Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which the policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the Company is liable. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity, more than 12 months after the time proof is otherwise required."

We note from the unequivocal language of the contract that the 90-day deadline for submitting proof of loss is not absolute, but rather that such proof is still timely offered to the insurer if "furnished as soon as reasonably possible." In discussing similar requirements in the context of liability insurance, it has been said that

> "[t]he rules with respect to notice provisions in liability policies, similar to that present in the instant case, are also well established, and are to the effect that:
>
> > 'Generally, courts have followed the rule that the insured has a duty to notify the insurer within a reasonable time after the accident. The determination of what constitutes a reasonable period of time depends on the facts and circumstances in a particular case. [Citations.] A lengthy passage of time is not an absolute bar to coverage provided the insured has a justifiable excuse for the delay. [Citations.] However, an insured's lack of diligence is not overlooked merely because the insurer has failed to show actual prejudice due to the delay, although this factor may be considered by the court. [Citations.] Generally, the actions of the insured are scrutinized under a standard of reasonableness in determining whether he gave notice as soon as it was practicable for him to do so.' *McFarlane v. Merit Insurance Co.* (1st Dist. 1978), 58 Ill. App. 3d 616, 619, 374 N.E.2d 951.

While the question of reasonableness is usually a fact question for the jury, as stated in *Kenworthy v. Bituminous Casualty Co.* (4th Dist. 1975), 28 Ill. App. 3d 546, 548, 328 N.E.2d 588:

> " '*** it has also been held that if there is no controversy as to the facts, the question of reasonableness is for the judge to decide.' " (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 299, 388 N.E.2d 253, 255-56.)

We find the rationale for the notice provision in the liability policy and the rationale for the notice provision in the disability policy to be sufficiently similar that there is no reason for not applying the same measure for reasonableness.

The plaintiff in the case at bar has offered a justification to excuse his delay in submitting proof of loss. Specifically, he submits that Dr. Mileris was unable to schedule an appointment to conduct an examination for some months after the doctor was first contacted. If the plaintiff's allegations are believed, his scheduled examination by Dr. Mileris was not a result of self-prescribed physician-shopping, but rather was in conformity with the recommendation of his then treating physician, Dr. Anderson. To determine conclusively that Crowell was not disabled as of September 4, 1978, in reliance on Dr. Anderson's March 1978 diagnosis, places too much weight on that diagnosis when taken with the assertion that the same diagnosis contemplated further evaluation and treatment by the specialist, Dr. Mileris. Also, if Crowell's allegations are believed, the insurer was advised of the scheduling problem with Dr. Mileris. The believability of the plaintiff's allegations raises an issue of fact. Likewise, the plaintiff's delay for several months while waiting for his appointment with Dr. Mileris brings into question the reasonableness of his conduct. These are controversies more appropriate for a jury's determination than for resolution in a motion for summary judgment.

Dr. Mileris' April 1979 report to the insurer stated that Crowell was most likely not able to hold employment during the six-month period prior to February 14, 1979. If the factual issue concerning the timeliness of this report were decided favorably for the plaintiff, then the insurer had before it two contradictory opinions, both by medical experts, concerning the degree of Crowell's disability. Whether the insurer was justified in relying on the conclusions of Dr. Martinez rather than Dr. Mileris is a question of fact. The plaintiff offers a persuasive argument that Dr. Martinez' diagnosis was less reliable than Dr. Mileris' because Dr. Martinez did not conduct a Naffziger test and a Sperling compression test. It would be inappropriate to evaluate the

918

comparative reliability of these two diagnoses on a motion for summary judgment. Rather, this is a fact question more properly answered by the finder of fact after hearing all the relevant evidence.

■ Where disputes involving insurance contracts concern strictly matters of law, it is proper to resolve these disputes in summary judgment, but the procedure "should not be used to preempt the right to a jury trial or the right to fully present the factual basis for a case where a material dispute may exist." (*Federal Savings & Loan Insurance Corp. v. Pacific Employers Insurance Co.* (1978), 63 Ill. App. 3d 157, 161, 379 N.E.2d 682, 685.) Where the reasonableness of notice is dependent on the circumstances surrounding the individual case, an issue of fact arises which precludes summary judgment. (*Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337.) As we have identified above, the facts and circumstances of this case do raise certain issues of fact, and, accordingly, we must conclude that the circuit court's grant of summary judgment was improper. We conclude that the authorities cited require the remand of this matter for a hearing on the merits of plaintiff's complaint.

Reversed and remanded.

STOUDER and BARRY, JJ., concur.