IMPERIAL CASUALTY & INDEMNITY COMPANY, Plaintiff–Appellee,

v.

CHICAGO HOUSING AUTHORITY, Defendant–Appellant.

No. 92–1026.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1992.

Decided March 4, 1993.

Roseann Oliver, John J. O'Shea, Pope & John, Chicago, IL, for plaintiff-appellee.

Gary K. Moore, Delbert J. Brehman, Thomas J. Branit, Moore & Maisel, F. Willis Caruso, Chicago Housing Authority, Chicago, IL, for defendant-appellant.

Before BAUER, Chief Judge, POSNER and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

Imperial Casualty Company ("Imperial") brought a declaratory judgment action to determine whether a policy it issued for the Chicago Housing Authority ("CHA") cov-

ered a claim made by a CHA resident, Derrick Hale. Both Imperial and the CHA filed motions for summary judgment. The magistrate judge determined that Imperial did not receive reasonable notice of the claim, and granted summary judgment in its favor. The CHA's motion for summary judgment was denied. We affirm.

## I.

In 1981 the Hale family moved to an apartment owned and maintained by the CHA. Nine-year-old Derrick Hale had suffered from asthma for six years. His condition worsened in the CHA apartment, allegedly due to incinerator smoke, cockroaches, mold, dampness, garbage, and emanating sewage fumes. The CHA received several letters ("the letters") that informed the CHA of Derrick's condition. One of the letters was written in June 1983 by Dr. Richard Newcomb. Dr. Newcomb wrote that Derrick's "very severe asthma" had been "life-threatening" on many occasions. He asserted that exposure to conditions in the CHA apartment, particularly the incinerator smoke, sewer fumes, and fecal droppings from cockroaches, was harmful to Derrick's health. Dr. Newcomb recommended that the CHA move the Hale family to a different apartment with better conditions. (Record "R." 1, Exhibit "Exh." B).

Dr. Javeed Akhter wrote to the Chicago Department of Human Services in March 1984. That letter delineated the numerous occasions on which Derrick had been treated for asthma attacks since moving into the CHA apartment. The letter explained:

> Since moving into this apartment building Derrick has had increased symptoms and attacks of asthma. In 1981 he had six hospitalizations and two emergency room visits; in 1982 he had eleven (11) hospitalizations and one emergency room visit; in 1983 he had seven hospitalizations and six emergency room visits; and so far in 1984 he has had one hospitalization already.
>
> In view of this child's medical history and the life-threatening disease we are asking that you find this family another

apartment which will not exposure [sic] Derrick's health to any unnecessary risks.

(R. 1, Exh. C).

In January 1985, Derrick suffered a severe asthma attack that lead to respiratory and cardiac arrest, which in turn caused him to lapse into a coma ("the 1985 incident"). He remained comatose for several months and suffered vision loss and permanent brain damage. In May 1985, Derrick sued the CHA in federal court. That case was dismissed for jurisdictional reasons, and in November 1986 Derrick sued the CHA in Cook County Circuit Court, alleging the exact facts of the May 1985 federal complaint. Attached were Dr. Newcomb's and Dr. Akhter's letters. (R. 1, Exh. B).

The CHA carried a comprehensive general liability insurance policy ("the policy") with Imperial. The policy covered the period from April 1, 1982 through April 1, 1983. It states:

> Whenever the insured has information from which it is reasonable to conclude that an incident involves injuries or damages which are likely to involve this policy or which involve fatalities, spinal injuries, head injuries, loss of limb and other serious bodily injury, irrespective or [sic] liability or reserve, written notice containing particulars sufficient to identify the insured and also reasonable [sic] obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the insured and of available witnesses shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. Failure to notify the company of any act or omission which at the time of its happening did not appear to give rise to claims hereunder, shall not prejudice such claims.

(R. 1, Exh. A). The policy defines bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." The CHA informed Imperial of Derrick's lawsuit in a letter dated April 28, 1989. That notice stated:

The Underlying Complaint in the case of *Hale v. Chicago Housing Authority*, presently pending in the Circuit Court of Cook County, Law Division, alleges Derrick Hale was exposed to life-threatening conditions existing in or near an apartment he occupied at 3517 S. Federal, Chicago, Illinois beginning in the "spring of 1981." We are, therefore, putting you on notice at the request of the St. Paul Surplus Lines Insurance Company (Policy No. CC05508442–4/1/84–4/1/85).

(R. 1, Exh. D).

## II.

Imperial is incorporated and has its principal place of business in Nebraska. The CHA is a municipal corporation organized under Illinois law, and Derrick Hale is an Illinois citizen. Our jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1334(a)(1). The parties agree that Illinois law governs this case.

Summary judgment is appropriate when no genuine issue of material fact is raised by the circumstances of the case, and the moving party should prevail as a matter of law. *Atlanta Int'l Ins. Co. v. Yellow Cab Co.*, 962 F.2d 657 (7th Cir.1992); *Crowell v. Life Investors Ins. Co.*, 133 Ill.App.3d 913, 918, 89 Ill.Dec. 81, 479 N.E.2d 1087 (3d Dist.1985). We review summary judgment decisions *de novo*, taking all inferences on behalf of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). If the facts surrounding notice are not disputed, a question of law is presented that may be answered on summary judgment. *Grasso v. Mid–Century Ins. Co.*, 181 Ill.App.3d 286, 129 Ill.Dec. 927, 536 N.E.2d 977 (1st Dist.1989); *Illinois Valley Minerals Corp. v. Royal–Globe Ins. Co.*, 70 Ill.App.3d 296, 299–300, 26 Ill.Dec. 629, 388 N.E.2d 253 (3d Dist.1979). Neither Imperial nor CHA contend that a genuine issue of material fact exists about the events surrounding the notice issue and the record contains the documents that allow us to consider whether summary judgment was appropriate as a matter of law. *Sonoco Buildings Inc. v. American Home Assurance Co.*, 877 F.2d 1350, 1353 (7th Cir.

1989); *see Mortell v. Insurance Co. of North America*, 120 Ill.App.3d 1016, 1024, 76 Ill.Dec. 268, 458 N.E.2d 922 (1st Dist. 1983).

The policy required that the CHA give Imperial notice of a potential claim "as soon as practicable." Under Illinois law, that requirement is the same as reasonable notice. *State Security Ins. Co. v. Burgos*, 145 Ill.2d 423, 431, 164 Ill.Dec. 631, 583 N.E.2d 547 (1991). Imperial claims that when the CHA received the letters and complaints it knew or should have known that a claim against the policy was likely to arise and notice was due at that time. The CHA argues that it could not know that Derrick's health problems during the time the policy was in effect were serious injuries under the terms of the policy, or were related to the 1985 incident, until Derrick's doctors were deposed in spring 1991. For this reason, the CHA argues that its notice to Imperial in April 1989 was reasonable, if not early.

The question is whether the CHA should have reasonably concluded that the health problems Derrick suffered during the policy period were incidents involving injury or damages that likely would lead to a claim against the policy. We have been taken to task for our recent interpretation of a similar question of·Illinois law. *Hartford Accident & Indem. Co. v. Rush–Presbyterian–St. Luke's Medical Ctr.*, 231 Ill.App.3d 143, 152, 172 Ill.Dec. 641, 595 N.E.2d 1311 (1st Dist.1992). The *Hartford* court criticized our decision in *Atlanta Int'l Ins. Co. v. Yellow Cab Co.*, 962 F.2d 657 (7th Cir. 1992). In *Yellow Cab*, a cab struck a motorcycle, and the cyclist sustained serious injuries. The notice provision in the *Yellow Cab* policy stated "The insured shall immediately advise the Company of any accident or occurrence which appears likely to result in liability...." *Id.* at 658. The primary insurer did not notify the excess insurer of the claim until the insured lost a jury trial trying to defend the personal injury lawsuit. The jury awarded the plaintiff $700,000. The insured sought coverage because the excess insurance policy

indemnified claims of more than $400,000. Relying on a very similar case, *Atlanta Int'l Ins. Co. v. Checker Taxi Co.*, 214 Ill.App.3d 440, 158 Ill.Dec. 228, 574 N.E.2d 22 (1st Dist.1991), we determined that because the plaintiff claimed $500,000 damages and repeatedly refused to settle for less, the primary insurer should have concluded that a claim against the secondary policy was likely to involve the excess insurance policy. *Yellow Cab*, 962 F.2d at 660.

The *Hartford* court disagreed with our decision. It stated that our interpretation of Illinois law was incorrect because, when construing ambiguities in favor of the insured, the *Yellow Cab* policy allowed the insured to exercise its discretion to determine when claims were "likely." *Hartford*, 231 Ill.App.3d at 152, 172 Ill.Dec. 641, 595 N.E.2d 1311. The court stated further that the exercise of this discretion rested upon the insured's investigation and evaluation of the case. The reasonableness of the notice must be considered in light of what was learned and concluded during this investigation. The *Hartford* court believed that although the settlement demands made a claim in *Yellow Cab* possible, the insured could reasonably conclude that a claim was not likely, and such a conclusion was within its discretion. *Hartford*, 231 Ill.App.3d at 152, 172 Ill.Dec. 641, 595 N.E.2d 1311.

The *Hartford* court then considered the notice provision in the case before it. That provision stated "[w]henever it appears that an *occurrence* is likely to involve indemnity under this policy, written notice shall be given to the company or any of its authorized agents as soon as practicable." *Id.* at 145, 172 Ill.Dec. 641, 595 N.E.2d 1311 (emphasis in original). The court deemed this a discretionary provision, and stated that it "must determine whether the insured abused the discretion granted it by the insurer, *i.e.*, whether the insured acted unreasonably under the circumstances." *Id.* at 150, 172 Ill.Dec. 641, 595 N.E.2d 1311. The court found the delay reasonable because the nearly two-year period between the filing of the complaint and the notice to the excess insurer was spent investigating the claim and progressing toward trial. The court also considered that the insurance company's interests were protected by the insured, the trial would not occur for several months following the notice, and enough time remained for the insurance company to perform its own investigation. *Id.* at 152–53, 172 Ill.Dec. 641, 595 N.E.2d 1311.

■ The notice provision in *Hartford* is much like the notice provision in this case, but the cases are otherwise distinguishable. More time passed in this case—approximately two years or four years depending on which complaint is considered to have sufficiently alerted the CHA. The trigger date is not important; either time period was unreasonable. To benefit from the discretionary language of the notice provision, the insured must act reasonably and not "sit idly by, allowing the case to languish." *Hartford*, at 152, 172 Ill.Dec. 641, 595 N.E.2d 1311. The CHA, however, did allow the case to languish. Although the CHA argues that it could not know if a claim was likely until it deposed Derrick's doctors, it did not depose either Dr. Newcomb or Dr. Akhter until this declaratory judgment action was filed. Unlike the insured in *Hartford*, the CHA did not protect Imperial's interests and ability to defend a possible claim.

Moreover, the CHA's argument that it could not learn of the relationship between the apartment conditions during the policy period and the 1985 incident until the doctors' depositions is ridiculous. The doctors' deposition testimony repeated what the CHA could have, and should have, learned from the letters. The CHA itself summarized that "they essentially testified that the exposure may have agitated his body and tissues and thus predisposed him to the attack." (CHA Brief at 8). The deposition testimony reveals little more on that issue than did the letters. The letters warned the CHA of Derrick's medically determined "life-threatening" illness. They stated that the conditions in Derrick's CHA apartment exacerbated his illness. They disclosed that Derrick's asthma attacks were sufficiently serious to warrant extensive emer-

gency medical treatment. This information was paired with a state court complaint that alleged Derrick's health problems culminated in the 1985 incident. The CHA argues that although it is sophisticated in insurance claims matters, it is not sophisticated in medical matters. (CHA Brief at 11, Reply brief 5–9). Medical sophistication, it argues, was required to know that a claim might likely arise. We disagree. We believe that sophistication in insurance matters is enough; Derrick alleged that the apartment conditions during the policy period were related to the 1985 incident. *Cf. INA Ins. Co. of Illinois v. City of Chicago*, 62 Ill.App.3d 80, 84, 19 Ill.Dec. 519, 379 N.E.2d 34 (1st Dist.1978) (city was a sophisticated insured, and therefore should have exercised due diligence to determine if policy coverage existed and whether notice was necessary).

We also note that the CHA notified Imperial of the likelihood of Derrick's claim in April 1989, approximately two years before the CHA deposed the doctors. The notice parroted the factual allegations which were identical in both the May 1985 and November 1986 complaints. The notice was given upon recommendation of another insurance carrier. That carrier concluded that a claim might likely arise. We see no reason why the CHA could not draw the same conclusion either on its own or in the face of the insurance carrier's recommendation. The CHA notified Imperial before the doctors' depositions, and it is ridiculous to argue now that it could not have known of the likelihood of a claim without those depositions.

Finally, we consider whether Imperial must demonstrate prejudice to avoid coverage. Illinois public policy favors construing insurance policies in favor of coverage. *State Security Ins. Co. v. Burgos*, 145 Ill.2d 423, 438, 145 Ill.Dec. 631, 583 N.E.2d 547 (1991). This policy guides decisions as to whether an insurance carrier must show that it was prejudiced by an unreasonably late notice before it can disclaim coverage. The Illinois Appellate Court has noted that because compliance with a notice provision may be a condition precedent to coverage, the provision may by given effect without

violating public policy. *Coronet Ins. Co. v. Ferrill*, 134 Ill.App.3d 483, 486, 89 Ill.Dec. 691, 481 N.E.2d 43 (1st Dist.1985). In *Del Grosso v. Casualty Ins. Co.*, 170 Ill.App.3d 1098, 120 Ill.Dec. 860, 524 N.E.2d 1042 (1st Dist.1988), the Illinois Appellate Court considered significant the fact that the party seeking coverage was not an injured victim, but a co-insurer. The court reasoned that because the insured was sophisticated, public policy concerns about the invocation of contract defenses were absent. Under those circumstances, the court held that "imposition of a prejudice requirement before a notice provision may be enforced, in addition to being unprecedented in this State, would be unjust." *Id.* at 1101, 120 Ill.Dec. 860, 524 N.E.2d 1042.

At any rate, Imperial claims that it was prejudiced because it was unable to investigate. (Imperial Brief at 12). The CHA does not argue otherwise. We can only conclude that Imperial was prejudiced by the delayed notice. The result is the same in either event.

### III.

The district court judgment is AFFIRMED.