(No. 71253.—

STATE SECURITY INSURANCE COMPANY, Appellant, v. RAMON SOTO BURGOS, Indiv. and d/b/a Casablanca Liquor and Grocery Store, *et al.*, Appellees.

*Opinion filed November 21, 1991.*

FREEMAN, J., took no part.

Brody, Gore, Fineberg & Wikoff, Ltd., of Chicago (Larry R. Wikoff and Marcus J. Nunes, of counsel), for appellant.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring and William J. Jovan, of counsel), for appellee Milagros C. Segarra.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, State Security Insurance Company, instituted this declaratory judgment action against defendants, Ramon Soto Burgos and Felicita Soto Burgos, individually

and d/b/a Casablanca Liquor and Grocery Store, Rolando Soto, and Milagros C. Segarra, administrator of the estate of Manuel A. Segarra. Plaintiff sought a declaration that it owed no duty to defend or indemnify its insureds, Ramon Soto Burgos and Felicita Soto Burgos, d/b/a Casablanca Liquor and Grocery Store, in a wrongful death action brought by Milagros C. Segarra on behalf of her deceased husband's estate. Plaintiff alleged that the Burgoses had failed to comply with a provision in their insurance policy which required the insured to give notice of an occurrence to plaintiff "as soon as practicable." Plaintiff and defendant Segarra both filed motions for summary judgment. The trial court denied plaintiff's motion and granted Segarra's motion. The appellate court affirmed. Plaintiff brings its appeal to this court on a certificate of importance issued by the appellate court pursuant to Supreme Court Rule 316 (134 Ill. 2d R. 316). Defendant Segarra was the only appellee to file a brief in this court.

On or about July 30, 1981, plaintiff issued an owner's, landlord's and tenant's liability policy (the policy) to Ramon Soto Burgos and Felicita Soto Burgos providing liability insurance for the operation of the Burgoses' grocery store. The policy provided coverage for the period beginning July 30, 1981, and ending July 30, 1982. On November 5, 1981, Manuel A. Segarra, a close friend and customer of the Burgoses, was shot and killed outside of the Burgoses' store by Rolando Soto, Ramon's son and a store employee. Immediately after the shooting, Ramon called Robert Patis, the insurance broker who had procured the policy for the Burgoses, and informed him of the shooting. Burgos called Patis again the following morning. Patis visited Burgos, at his store, later that day to discuss the incident. Patis told Burgos not to worry and that he would take care of the situation. Patis also informed Burgos that he believed that Burgos was not liable for the shooting and that the policy issued by plaintiff would not apply because

the shooting took place outside of the store and thus off the insured premises. Patis did not notify plaintiff of the shooting until he forwarded the complaint and summons Burgos received two years later.

On November 4, 1983, a lawsuit was filed by Milagros C. Segarra, as administrator of the estate of Manuel A. Segarra, against the Burgoses, individually and d/b/a Casablanca Liquor and Grocery Store, and Rolando Soto. When the Burgoses received the summons and complaint, they gave the documents to Patis, who mailed them to plaintiff. Plaintiff received the suit papers on November 28, 1983. It is undisputed that this was the first actual notice of the shooting that plaintiff received. Plaintiff sent the Burgoses a letter informing them that it would defend them under a reservation of rights. Plaintiff thereafter filed this declaratory judgment action to determine its obligations under the policy.

The policy in question was procured for the Burgoses by Patis, the Burgoses' insurance broker. Patis had been handling all of the Burgoses' insurance needs for over 20 years prior to this occurrence. The policy was issued by the plaintiff insurance company through its agent, Guild Insurance Agency (Guild). Guild transmitted the policy to Patis, who delivered the policy to the Burgoses. The Burgoses paid all premiums on the policy to Patis, who forwarded them to Guild. All notices regarding cancellation, premium changes and renewals were sent by Guild to Patis, who forwarded them to the Burgoses. All communication between plaintiff or Guild and the Burgoses was conducted through Patis. Patis received a commission from Guild for placing the Burgoses' insurance with plaintiff.

The declarations page of the policy contained the following printed provision regarding the representative of the insurance company:

> "REPRESENTATIVE:     Agent or Broker—
>                      Office Address—
>                      Town and State—"

When Patis received the policy from Guild, Guild's name and address had been typed in next to "Agent or Broker—." When Patis forwarded the policy to the Burgoses, he affixed a sticker containing the name and address of the "Robert Patis General Insurance Agency" over the name and address of Guild Insurance Agency. Patis also included a cover letter to the Burgoses with the policy which instructed the Burgoses to notify his office in the event of a loss.

Plaintiff and Segarra both filed motions for summary judgment in the declaratory judgment action. The trial court granted summary judgment in favor of Segarra. It concluded that the Burgoses' notification to Patis constituted compliance with the policy's notice provision because plaintiff had, through its course of dealing with the Burgoses, clothed Patis with apparent authority to act as its agent for the purpose of receiving notice. Plaintiff appealed and the appellate court affirmed on different grounds. The appellate court disagreed with the trial court's finding of apparent authority based upon course of dealings, but determined that plaintiff's and Patis' adherence to an industry custom of using brokers as intermediaries for notice purposes estopped plaintiff from denying Patis' authority to accept notice.

Plaintiff argues before this court that its motion for summary judgment should have been granted, and Segarra's motion denied, because as a matter of law, notice to Patis did not satisfy the policy's notice requirement. Plaintiff contends that Patis was not the apparent agent of plaintiff for notice purposes and that no industry custom was established which converted Patis into plaintiff's agent by estoppel.

## I

Initially, we must address plaintiff's motions to strike certain portions of defendant Segarra's brief. Plaintiff first moves to strike from Segarra's brief any references to evidence that plaintiff had issued insurance policies to the Burgoses prior to the policy in question. Plaintiff argues that there is no such evidence in the record. We agree. Our review of the record indicates that the only evidence regarding other policies issued to the Burgoses by plaintiff pertains to policies issued *after* the policy in question. Plaintiff's motion to strike any references in Segarra's brief to such prior policies is granted.

Plaintiff next asks this court to strike those portions of Segarra's brief which refer to (1) the details of the shooting incident, (2) the underlying lawsuit, and (3) the underlying procedural aspects of the case. Plaintiff proffers no grounds for striking these portions other than a general allegation of irrelevancy. We find Segarra's recitation of the facts pertaining to each of these areas to be brief passages which merely provide a background for the instant declaratory judgment action. Plaintiff's motion to strike those portions of Segarra's brief is denied.

## II

We now turn to the resolution of the dispositive portion of this declaratory judgment action. The issue presented is whether, under the facts of this case, the broker who sold the policy to the insured is also the authorized agent of the insurance company for the limited purpose of accepting notice of an occurrence from the insured.

The notice of occurrence provision of the insurance policy stated that "in the event of an occurrence" notice "shall be given *by or for the insured* to the company *or any of its authorized agents* as soon as practicable \*\*\*." (Emphasis added.) The policy also provided that compli-

ance with the notice of occurrence provision is a condition precedent to plaintiff's obligation to provide coverage under the policy.

Notice of occurrence provisions in insurance liability policies are valid prerequisites to coverage. (*Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 281.) A provision calling for notice "as soon as practicable" requires notification to the insurer within a reasonable time. Whether notice was given within a reasonable time is dependent upon all the facts and circumstances of the particular case. (*Barrington*, 58 Ill. 2d at 281; *Sowinski v. Ramey* (1976), 36 Ill. App. 3d 690, 694.) Thus, the critical inquiry in the case *sub judice* is whether the Burgoses gave notice of the occurrence to plaintiff or its authorized agent within a reasonable time.

It is undisputed that the Burgoses informed the broker immediately following the occurrence. The policy requires that notice be given to plaintiff or any of its "authorized agents." It is generally recognized that an insurance broker acts as an agent of the insured, rather than as an agent of the insurer. (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 582.) However, a broker can act as the agent of the insurer, or as the agent of both the insurer and the insured. (*Empire Fire & Marine Insurance Co. v. Faith Truck Lines, Inc.* (1988), 178 Ill. App. 3d 356, 359.) Further, a broker may have apparent authority to act as the insurer's agent. (*Empire*, 178 Ill. App. 3d at 359.) It is a well-established precept of agency law that a principal will be bound by the authority he *appears* to give to another, as well as that authority which he actually gives. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 426.) Apparent authority arises where a principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts.

(*Lynch*, 82 Ill. 2d at 426; *Wasleff v. Dever* (1990), 194 Ill. App. 3d 147, 157.) Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 882.) The principal, having created the appearance of authority, is estopped to deny it to the detriment of a third party. *Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278.

A broker's apparent authority to act as an agent of an insurer may be established by the course of dealings between the broker and the insurer. (*Ledbetter v. Crudup* (1983), 114 Ill. App. 3d 401, 403.) Where an insurer's manner of dealing with the broker in regard to the insured would lead the insured to believe that the broker had the authority to perform the acts in question, the insurer is estopped to deny the broker's authority to perform those acts. (See 3 Couch on Insurance §26:62, at 624 (2d ed. 1984); *Empire*, 178 Ill. App. 3d at 359.) Apparent authority in the broker thus arises where the insurer knowingly *causes* or *permits* the broker to act so as to justify the insured in believing that the broker possesses the authority exercised. 3 Couch on Insurance §26:28, at 560 (2d ed. 1984).

Acquiescence by the insurer in the broker's conduct is sufficient to establish the broker's apparent authority. (3 Couch on Insurance §26:64, at 627 (2d ed. 1984).) It is not necessary that the insurer be aware of the particular acts being performed by the broker; once the insurer has created the appearance of authority, the insurer is estopped to deny it, even though the insurer may be ignorant of its exercise. (3 Couch on Insurance §26:65, at 629 (2d ed. 1984).) Fairness mandates such a result because, where the insurer has created the appearance of authority in the broker, the loss must fall upon the insurer, rather than

upon the innocent insured. 3 Couch on Insurance §26:65, at 630 (2d ed. 1984).

## A

In the case at bar, we find that plaintiff's manner of dealing with Patis and the Burgoses created the appearance that Patis had authority to accept notice of occurrences. The depositions and affidavits in the record demonstrate that plaintiff used Patis as its intermediary in all of its dealings with the Burgoses. Plaintiff used Patis to deliver the policy to the Burgoses, rather than sending the policy to the Burgoses directly. Patis was used by plaintiff to bill the Burgoses for premiums on plaintiff's behalf and Patis collected all premiums from the Burgoses to be forwarded to plaintiff. All notices from plaintiff to the Burgoses regarding cancellation, renewals or premium changes were sent by plaintiff, through Guild, to Patis, who forwarded them to the Burgoses. It is true, as plaintiff points out, that Patis never submitted a prior notice of occurrence to plaintiff on the Burgoses' behalf. Therefore, plaintiff argues, it could not be deemed to have clothed the broker with apparent authority to accept such a notice. However, the record reveals that the Burgoses did not have any prior "occurrences" to report while covered under a policy issued by plaintiff.

In sum, the Burgoses had no contact whatsoever with plaintiff, except through Patis. It is apparent that nothing prohibited plaintiff from contacting the Burgoses directly. Rather, this lack of direct contact was due primarily to plaintiff's decision to use Patis as its intermediary for every aspect of its transactions with the Burgoses. Plaintiff's choice to deal with the Burgoses in this manner made it reasonable for the Burgoses to believe that Patis was authorized to receive notice on plaintiff's behalf. Plaintiff caused Patis to act so as to justify a belief in the Burgoses that Patis was plaintiff's "authorized agent" for

notice purposes. See 3 Couch on Insurance §26:28, at 560 (2d ed. 1984).

An insurance broker's primary function is to negotiate and procure an insurance policy on behalf of an insured. (See *Davidson v. Comet Casualty Co.* (1980), 89 Ill. App. 3d 720, 723.) When a "broker" performs the additional functions of delivering the policy to the insured and collecting premiums on behalf of the insurer, he is generally considered to be doing so as an agent of the *insurer*. (See 3 Couch on Insurance §25:96, at 456 (2d ed. 1984).) Patis completed his normal function as a broker by placing the Burgoses' business with plaintiff. As noted, plaintiff or Guild could have then sent the policy directly to the Burgoses and thereafter conducted all communications with the Burgoses directly. However, rather than pay Patis his commission and await the next piece of business, plaintiff made the conscious and deliberate choice to enlarge the broker's role in dealing with these insureds.

Using a broker as a conduit between the insurer and the insured is a common marketing technique used by insurance companies. To strengthen the effectiveness of a broker as a marketing tool, the company may choose to enlarge the broker's authority so that he will be in a position to retain the insured's business with the company and to acquire additional business for the company. This occurred in the instant case. Patis was used by plaintiff to perform certain functions which went beyond the normal functions of a broker. As stated above, Patis performed a number of functions as an agent of plaintiff. This conduct on plaintiff's part allowed Patis to assume the appearance of an "authorized agent" under the notice provision, and plaintiff is now estopped to deny Patis' authority in that respect. "There is no magic in the term 'broker' that will permit an insurance company to hide behind him in case of a loss and insist that he is the representative of the as-

sured ***." *Roy Iverson Co. v. United States Lloyds, Inc.* (1929), 251 Ill. App. 150, 153.

## B

The appearance of authority in Patis was further strengthened by the language of the declarations page of the policy. This language, drafted by plaintiff on plaintiff's form, reasonably leads to the conclusion that a "broker" could be the "representative" of plaintiff. As set out earlier in this opinion, the language of the declarations page provision designating plaintiff's "representative" contains the words "Agent or Broker—" followed by a space for the "representative's" name and address. On the copy of the policy delivered to the Burgoses, Patis had affixed a sticker with his agency's name and address in the space for the "representative's" name and address. The policy thus appeared to the Burgoses to list Patis as plaintiff's "representative." While it is true that Guild Insurance Agency's name and address had been typed in that space when Patis received the policy, it was certainly foreseeable that, because the printed provision referred to a "broker," Patis would insert *his* name and address in the space for the "representative's" name and address. In fact, Patis' deposition testimony indicates that his agency routinely affixed stickers containing his name and address in that position on plaintiff's policies. The "representative" provision, drafted by plaintiff, clearly invited such a practice by brokers and thus contributed to the appearance that Patis was the "representative" of plaintiff.

## C

Finally, the deposition testimony of plaintiff's own claims manager, Michael Fitzgerald, supports our conclusion. Fitzgerald testified that plaintiff receives notices of occurrences from brokers as well as insureds. Fitzgerald further stated, when asked if he knew why notice of the

underlying lawsuit in the present case came from Patis rather than the Burgoses, "I can only speculate, but just on general procedure as is quite often, an insured will report the claim to the individual that the[y] pay their insurance premiums to." It is evident from this testimony that plaintiff had allowed an atmosphere to be created, and was aware that such had been created, in which insureds believed that notification to their brokers was a proper course. Buttressing this conclusion is Patis' deposition testimony. Patis stated that he had placed 100 to 200 risks with plaintiff. Patis went on to testify that he routinely informed his clients to notify his office in the event of an occurrence and that he customarily received notices from insureds and forwarded them to plaintiff. Despite this routine, plaintiff never informed Patis that this was not a proper method. Plaintiff thus took no action to dispel the appearance that Patis had authority to accept notice. By that inaction, plaintiff permitted Patis to act as though he possessed that authority and plaintiff is now estopped to deny that such authority existed in Patis. See 3 Couch on Insurance §26:28, at 560 (2d ed. 1984).

Plaintiff makes much of the fact that, prior to the instant occurrence, Patis had never forwarded notice of an occurrence to plaintiff on the Burgoses' behalf. Plaintiff argues that this lack of prior notice-forwarding by Patis precludes a finding of apparent authority to accept notice in Patis. We disagree. While it is true that no prior history of notice-forwarding by Patis is present in this case, we believe that the factors which are present are sufficient to establish Patis' apparent authority to accept notice on plaintiff's behalf. As stated, *all* correspondence and communication between plaintiff and the Burgoses was conducted through the conduit of Patis. Further, the declarations page of the Burgoses' policy referred to plaintiff's "representative" as being either an "agent" or a "broker." As noted, not only did this factor lead the insured to

believe that a "broker" could be plaintiff's "representative," it also invited a broker to insert his name as the "representative," as was done by Patis. Additionally, there was testimony in this case from plaintiff's own claims manager that plaintiff was aware that it had created an atmosphere in which insureds believed that notification to their brokers was a proper course and that plaintiff did nothing to dispel that belief. Patis' deposition testimony that he routinely received notices from insureds and forwarded them to plaintiff, without correction or criticism from plaintiff, corroborated that testimony. In view of these facts, we cannot say that the mere fact that the Burgoses were fortunate enough to have had no "occurrences" to report to plaintiff prior to the shooting detracts from the reasonableness of their belief in Patis' authority.

In light of plaintiff's manner of dealing with the Burgoses regarding the policy, we find that it was reasonable for the Burgoses to believe that Patis was an "authorized agent" within the meaning of the policy's notice provision. That the Burgoses harbored this belief is clear. Ramon Soto Burgos testified in his deposition that he believed that Patis was the person he had to contact in the event of an occurrence. As Ramon stated, "The only guy I deal with was [Patis]. *** I believe if I report it to him, I don't have to report to nobody else." Plaintiff's conduct made this belief on the part of the Burgoses manifestly reasonable. Moreover, a relevant consideration in this analysis is the insured's level of sophistication in business and insurance matters. (*Brotherhood Mutual Insurance Co. v. Roseth* (1988), 177 Ill. App. 3d 443, 449.) Here, Ramon, born and raised in Puerto Rico, possessed only a ninth-grade education obtained in Puerto Rico and a few months of English language classes. Ramon's lack of education and imperfect command of the English language certainly connotes a lack of sophistication in these matters which contributed to the reasonableness of his belief that Patis

was plaintiff's agent for notice purposes. Notice to Patis was thus sufficient to comply with the policy's requirement and summary judgment in favor of Segarra was proper. We conclude, as a matter of law, that it was reasonable for the Burgoses to believe that Patis, the broker, was an "authorized agent" within the terms of the notice provision.

### III

We conclude that an additional ground exists for a finding that the Burgoses complied with the policy's notice provision by reporting the incident to Patis. We find that the term "authorized agent," as used in the policy, is ambiguous and, as such, must be construed in favor of coverage. It has consistently been held that insurance policies are to be liberally construed in favor of coverage and where an ambiguity exists in the terms, the ambiguity will be resolved in favor of the insured and against the insurer. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4; *Wahls v. Aetna Life Insurance Co.* (1983), 122 Ill. App. 3d 309, 313.) This rule is particularly applicable to ambiguities in clauses which purport to take away coverage otherwise granted by the policy. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 371.) Accordingly, all conditions, exclusions or exceptions are to be most strictly construed against the insurer. (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 583.) In the context of liability insurance policies, public policy considerations also dictate that a liberal construction in favor of coverage be applied as the recovery of an injured third party is involved. *Del Grosso v. Casualty Insurance Co.* (1988), 170 Ill. App. 3d 1098, 1101.

In the instant case, the policy requires that notice of an occurrence be given to plaintiff or any of its "authorized

agents." Nowhere in the policy is the term "authorized agent" defined. A term in an insurance policy is ambiguous if it is susceptible of more than one reasonable interpretation. (*Marathon Plastics, Inc. v. International Insurance Co.* (1987), 161 Ill. App. 3d 452, 464.) Whether an ambiguity exists is a question of law for the court to decide. (*Allstate Insurance Co. v. Boston Whaler, Inc.* (1987), 157 Ill. App. 3d 785, 789.) We find that the term "authorized agent" is ambiguous because it is subject to more than one reasonable interpretation. With no policy provision defining the term, the insured is left to determine for himself who or what entity qualifies as an "authorized agent."

The fact that the declarations page of the policy, when received by Patis, listed Guild next to "Agent or Broker—," in the provision designating plaintiff's "representative," does not remove the ambiguity. To the contrary, this provision only adds to the insured's confusion as it indicates that *either* an "agent" or a "broker" could qualify as plaintiff's "representative." The policy which was delivered to the Burgoses listed Patis' agency in that position and Patis' insertion of his name in that position was clearly invited by plaintiff's use of the phrase "*Agent or Broker—.*"

A similar situation was presented in *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, where it was held that notice to a broker satisfied the policy's notice requirement because of the ambiguity of the term "authorized representative," as used in that policy. In *Mitchell*, the policy required that notice be given to the insurer or one of its authorized agents. The policy thereafter referred to an "Authorized Representative" next to several blank signature lines. The insured contended that it believed the broker was the insurer's agent for receipt of notice because it had purchased the policy from the broker and "was accus-

tomed to dealing with [the broker] regarding questions on its insurance." (*Mitchell*, 138 Ill. App. 3d at 581.) The *Mitchell* court concluded that it was reasonable for the insured to assume that the broker was the insurer's "Authorized Representative" for notice purposes. The court based its conclusion upon the fact that the policy did not define "Authorized Representative" or "authorized agent" for notice purposes. The court reasoned that "Authorized Representative" was therefore an ambiguous term which should be interpreted in favor of coverage. *Mitchell*, 138 Ill. App. 3d at 583.

We thus conclude that "authorized agent," as used in the notice provision of the policy in question, is an ambiguous term which must be interpreted in favor of coverage. We find that, in light of this ambiguity, it was reasonable for the Burgoses to believe that Patis was plaintiff's "authorized agent." The Burgoses' notification of Patis therefore satisfied the policy's notice requirement. For this additional reason, summary judgment in favor of Segarra was proper.

Accordingly, for the aforesaid reasons, we affirm the judgment of the appellate court which affirmed the granting of defendant Segarra's motion for summary judgment and the denial of plaintiff's motion for summary judgment.

*Appellate court affirmed.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.