962 F.2d 749
 Harold J. CARSTON, Michael DeWinter, Lawrence J. DeWinter,
Dean Eckberg, Daniel J. Kokaska, Donald Marevka, Dennis
Mezera, James S. Owczarski, William Proper and Walter S.
Scahill, Plaintiffs-Appellees,
v.
The COUNTY OF COOK, the Civil Service Commission of Cook
County, the Cook County Board and its
Commissioners and Oak Forest Hospital,
Defendants-Appellants.
 No. 90-3830.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 24, 1991.
Decided May 12, 1992.
Rehearing and Rehearing In Banc
Denied July 28, 1992.
 
 Alan S. Mills (argued), Chapman & Associates, Janet F. Gerske, Chicago, Ill., for plaintiffs-appellees.
 M. Anne Gavagan, LaVerne Saunders (argued), Office of the State's Atty. of Cook County, Chicago, Ill., for defendants-appellants.
 Before POSNER and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.*
 KANNE, Circuit Judge.
 
 
 1
 Harold J. Carston and the other plaintiffs-appellees are long-time security officers at Oak Forest Hospital in Cook County, Illinois. During the 1970s, Oak Forest Hospital was operated by the Health and Hospitals Governing Commission ("HHGC"). The HHGC granted the security officers civil service protection pursuant to its merit system. In November 1979, the HHGC was abolished by statute and the Hospital became the responsibility of the Board of Commissioners of Cook County ("Cook County"). In 1983, Cook County notified the security officers that it did not recognize their protected status under the HHGC merit system, and that they would be required to take a competitive civil service examination to retain their positions. The officers filed this suit under 42 U.S.C. § 1983 alleging that Cook County's decision to require them to take the civil service examination violated the due process and equal protection clauses of the Constitution of the United States.
 
 
 2
 The district court granted summary judgment in favor of the security officers, and found that they were protected under the HHGC merit system and that this protection continued pursuant to the statutory transfer to Cook County. Cook County appeals.
 
 I.
 
 3
 All of the officers who prevailed in the district court were hired by Oak Forest Hospital between 1968 and 1979. Some of the officers were hired prior to July, 1970, when the hospital was operated by the County. Each of those officers was certified by the Civil Service Commission pursuant to its rules, which provided that certified employees could be discharged only for cause.
 
 
 4
 In 1970, when operation of the Hospital was transferred to the HHGC pursuant to ILL.REV.STAT. ch. 34, paragraphs 5011 et seq. (1981) (repealed Nov. 30, 1979), all employees who had been previously certified under the Civil Service Commission rules automatically became merit employees under the HHGC by operation of law. For new employees, the HHGC's merit system specifically provided that merit and fitness would be "ascertained insofar as practical by competitive examination or other techniques of person[ne]l administration based upon merit principles." ILL.REV.STAT. ch. 34, paragraph 5026 (repealed Nov. 30, 1979).
 
 
 5
 Other officers were hired between July, 1970 and November 30, 1979, while the Hospital was operated by the HHGC. They were hired pursuant to a competitive testing procedure developed by the Hospital pursuant to HHGC merit system requirements. After completing a six-month probationary period, the officers hired after 1970 became career status or "merit" employees pursuant to the merit system rules of the HHGC, and could only be fired for cause.
 
 
 6
 On November 30, 1979, the HHGC was repealed by statute and Oak Forest Hospital was returned to Cook County. The most important provision of those statutes, paragraph 5020 of Chapter 34 of the Illinois Revised Statutes, provided in part that: "All rights, duties and obligations of the Commission [ (HHGC) ] shall become the rights, duties and obligations of the Board of Commissioners [ (Cook County) ]."
 
 
 7
 After the County regained control of the Hospital it reclassified the security officers as temporary employees. Temporary employees can be discharged at any time and for any reason. The officers, who did not learn of the reclassification until 1983, continued to perform the same duties as they had before.
 
 
 8
 In February 1983, the Civil Service Commission announced that a civil service examination would be held for the PSO I position at the Hospital. Under the rules of the Civil Service Commission, anyone who successfully completed the examination would be ranked and placed on an eligible list for the PSO I position. Once the examination had been administered, the security officers, who were classified as temporary employees, would be terminated and replaced by members of the eligible list, unless they took the examination and scored higher than all of the other applicants. The officers filed this suit shortly thereafter.
 
 
 9
 In a memorandum opinion, the district court granted summary judgment to the officers. The court found that paragraph 5020 had conferred upon the security officers, excluding Kokaska, a protectible property interest in their employment. The district court also ruled that the officers had a protectible property interest in any promotions received under the merit system established by the HHGC, and that the officers did not become applicants upon the transfer of control to Cook County. The court awarded each successful officer $1 in damages and awarded the officers their attorneys' fees.
 
 II.
 
 10
 We review a grant of summary judgment de novo. Pro-Eco, Inc., v. Board of Commissioners of Jay County, Indiana, 956 F.2d 635, 637 (7th Cir.1992); First Wisconsin Trust Co. v. Schroud, 916 F.2d 394, 398 (7th Cir.1990). Summary judgment is appropriate if we can determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); Schroud, 916 F.2d at 398. In reviewing a district court's decision to grant summary judgment we "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990).
 
 
 11
 It is well settled that a property interest in employment "arises if there are 'rules or mutually explicit understandings' to support a claim of entitlement." Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1263 (7th Cir.1985) (quoting Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)); see also Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In Bishop, the Supreme Court made it clear that "the sufficiency of the claim of entitlement must be determined by reference to state law." Id. Thus, as in Patkus and Bishop, we must first determine whether the officers had a right under Illinois law to retain their jobs. Patkus, 769 F.2d at 1263.
 
 
 12
 Cook County concedes that Michael and Lawrence DeWinter, who were hired by Oak Forest Hospital prior to July, 1970, when it was under the jurisdiction of Cook County, attained civil service status. Dennis Mezera was also hired prior to July, 1970; thus, he also attained civil service status. Under paragraph 5026, the HHGC was required to recognize this merit status, when it assumed control of the Hospital in 1970. Thus, as the district court found, these officers clearly attained HHGC merit status.
 
 
 13
 The other plaintiffs who prevailed in the district court were hired by Oak Forest Hospital between July 1970, and November 1979, when the Hospital was operated by the HHGC. Cook County argues that the Hospital's records are insufficient to confirm that they attained protected status. The district court disagreed, and noted that the officers were not to blame for the sparse employment documentation retained by Cook County. The officers were hired by the HHGC pursuant to a competitive testing procedure. Paragraph 5026 required the HHGC to administer a merit system that provided that merit and fitness would be "ascertained insofar as practical by competitive examination or other techniques of person[ne]l administration based upon merit principles." The HHGC did establish a merit system which provided for entrance and promotional examinations, as well as consideration of previous work experience and/or education. It is undisputed that the HHGC administered tests and that the officers took those tests. The district court found that, although there were few records from the HHGC merit system, the officers clearly attained protected status under that system. Based upon our review of the record, we cannot find fault with this determination.
 
 
 14
 Finally, we must determine if the district court correctly resolved the status of promotions received pursuant to the HHGC system. The court found that although it is unclear whether those officers promoted were required to pass additional tests, those promotions were permanent and not temporary or probationary. Cook County does not challenge the factual findings relating to the promotions and we can see no reason to disturb them.[1]
 
 
 15
 Therefore, it is clear that the HHGC merit system, which gave the prevailing officers the right not to be discharged but for cause, established a protectible property interest in continued employment, which is protected by the due process clause. Patkus, 769 F.2d at 1263; Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985). We must next decide whether Cook County was obligated to recognize that protectible property interest when it reacquired control of Oak Forest Hospital in 1979.
 
 
 16
 Cook County argues that it had no such obligation because paragraph 5020 did not explicitly protect the officers' employment rights. Cook County points out that the 1971 statute which transferred Oak Forest Hospital to the HHGC, paragraph 5026, specifically protected the merit status of the employees transferred to the HHGC. From this, Cook County reasons that when it enacted paragraph 5020 nine years later, the Illinois legislature did not intend that the merit status of the HHGC employees be transferred to the County.
 
 
 17
 Because paragraph 5020 did not specifically mention the security officers, we cannot find that the Illinois Legislature specifically intended to divest them of the merit status they earned while employed by the HHGC. We do not believe that legislative silence on this issue can be equated with specific intent.
 
 
 18
 Cook County similarly contends that paragraph 5020 only transferred real and personal property, unexpended appropriations and pending business, and not employment obligations. The County relies on Peters v. Health & Hospitals Governing Commission, 88 Ill.2d 316, 58 Ill.Dec. 877, 430 N.E.2d 1128 (1981), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), as support for that proposition. In Peters, the Illinois Supreme Court considered whether labor agreements to which the HHGC had been a party were enforceable against Cook County. The court declined to specifically enforce against Cook County a term in the agreements, under which the HHGC was obligated to bargain in good faith with certain employees. Id. 58 Ill.Dec. at 878-879, 430 N.E.2d at 1129-1130. The court noted that: "[t]his record presents no question of the enforcement of specific contractual provisions concerning wages, hours, conditions of employment...." Id. As the officers argue that language certainly distinguishes Peters from this case. Indeed, the Peters court indicated that paragraph 5020 does apply to terms and conditions of employment. Id.
 
 
 19
 Cook County also places mistaken reliance on Howard v. County of Cook, 145 Ill.App.3d 538, 99 Ill.Dec. 431, 495 N.E.2d 1166 (1986). In Howard, the plaintiff worked at Cook County Hospital from September, 1979, until May or June, 1980, when she resigned. She was evidently rehired after applying for a job in September, 1980, but was fired later. Id. 99 Ill.Dec. at 432, 495 N.E.2d at 1167. The plaintiff contended that her merit status was transformed into civil service status by the November 1979 transfer legislation. Although, as Cook County points out, the court did state that "[n]othing in that legislation indicates that merit employees were automatically converted back to civil service employee status," id. 99 Ill.Dec. at 435, 495 N.E.2d at 1170, that statement was clearly dicta. The court also found that the plaintiff had not attained merit status for two other reasons. Id.
 
 
 20
 Also distinguishable is Grobsmith v. Kempiners, 88 Ill.2d 399, 58 Ill.Dec. 722, 430 N.E.2d 973 (1982), in which the court upheld a statute which altered the duration of certain civil service appointments. Id. 58 Ill.Dec. at 724, 430 N.E.2d at 975. The court stated: "It is well established that civil service status is not a vested right, that having been created by the General Assembly it is wholly within its control and subject to change by legislative action." Id. This case is different because the legislature has not attempted to change the civil service status of the employees. As we noted above, the most reasonable interpretation of paragraph 5020 is that it conferred on the officers a protectible property interest in their employment.[2]
 
 
 21
 Cook County's second argument is that the district court's interpretation of paragraph 5020 improperly delegates authority to the Cook County Civil Service Commission in violation of Chapter 34, § 3-14016, ILL.REV.STAT. ch. 34, p 3-14016 (1992), because the district court required the Commission to certify the civil service status of the officers. The County notes that the Civil Service Statute does not authorize the Civil Service Commission to certify an employee into merit status without testing. The district court did not order Cook County to certify the officers as merit employees, and the Commission is under no obligation to certify them. Cook County and the Commission are prohibited from violating the officers' due process rights. Even if the district court had ordered that the officers be certified, that would not change our interpretation of paragraph 5020. Simply put, because paragraph 5020 was enacted after the Civil Service Act took effect, it controls if it conflicts with the Civil Service Act.
 
 
 22
 Moreover, the Cook County Civil Service Commission can only test applicants for positions. ILL.REV.STAT. ch. 34, p 3-14016. We have held that Cook County may not treat the officers as applicants for their positions. Thus, the Civil Service Commission has no statutory authority to subject the officers to examinations to retain their positions. Fahey v. Cook Co. Police Dep't Merit Board, 21 Ill.App.3d 579, 315 N.E.2d 573, 577-78 (1974) (rules, which were adopted, were beyond Board's authority and therefore void.). Thus, we hold that the district court properly granted summary judgment to the officers, excluding Kokaska.[3]
 
 III.
 
 23
 In the alternative, Cook County challenges the award of attorney's fees to the officers pursuant to 42 U.S.C. § 1988. "Because of the factual nature of attorney's fee awards, appellate review is limited to a 'highly deferential abuse of discretion standard.' " Leffler v. Meer, 936 F.2d 981, 985 (7th Cir.1991) (quoting Dutchak v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 932 F.2d 591, 596 (7th Cir.1991)); Biggs v. Village of Dupo, 892 F.2d 1298, 1305 (7th Cir.1990).
 
 
 24
 Cook County does not dispute that the officers were the prevailing parties in this litigation, but argues that the award of fees was inflated because the officers succeeded only on one of their claims for relief. We agree with the district court that each claim presented "an alternate road to the same result." Moreover, the district court noted that it did not need to consider the alternate claims made by the officers because they prevailed on their due process claims.
 
 
 25
 Second, Cook County argues that the fees awarded were excessive because the officers used several lawyers who may have duplicated some work. The district court found that the officers' decision to use several lawyers was well founded, and reduced their fees slightly to account for any duplication. The district court also reduced the fees of the officers' counsel in part because one plaintiff did not prevail, and others were dismissed. We cannot find fault with those determinations because the district court had a better opportunity than we do to observe the officers' counsel in action. In sum, we hold that the district court did not abuse its discretion in awarding fees to the officers.
 
 IV.
 
 26
 Therefore, we AFFIRM the judgment in favor of the officers and the award of attorney's fees.
 
 
 
 *
 The Honorable Albert J. Engel, Senior Circuit Judge for the Sixth Circuit, is sitting by designation
 
 
 [1]
 The district court did not decide whether the officers had a protectible property interest in any promotions they had received after December 1979, when the County regained control of the Hospital. Therefore, we do not address that issue
 
 
 [2]
 Stenzel v. Health and Hospitals Governing Commission, 50 Ill.App.3d 545, 8 Ill.Dec. 690, 365 N.E.2d 1076 (1977) is also inapposite. In Stenzel, the plaintiffs, who were civil service employees, sought an injunction barring the HHGC from terminating them pursuant to a lay-off plan. The court held that the HHGC was not required to grant the plaintiffs the same seniority status they enjoyed under prior Civil Service Rules and Regulations, id. 81 Ill.Dec. at 691, 365 N.E.2d at 1077, because the legislation that created the HHGC merit system specifically authorized the HHGC to regulate lay-offs. Id. 81 Ill.Dec. at 692, 365 N.E.2d at 1078. Here, we have a different situation because paragraph 5020 did not authorize Cook County to give temporary status to the former HHGC employees
 
 
 [3]
 Kokaska was not employed until after Cook County resumed control of Oak Forest Hospital in 1979. Nevertheless, he took the HHGC merit examination and understood that that was sufficient to protect his status. The district court entered summary judgment in favor of Cook County and against Kokaska. Kokaska filed a notice of appeal in this court as an appellee, and he has not argued that the judgment against him should be reversed. Thus, we affirm the district court's order granting summary judgment to Cook County on Kokaska's claims