975 F.2d 1298
 61 USLW 2268, 123 Lab.Cas. P 10,374,
15 Employee Benefits Cas. 2606
 MASON & DIXON LINES, INCORPORATED, a Tennessee Corporation,
Central Transport, Incorporated, a Michigan
Corporation, and Centra, Incorporated, a
Delaware Corporation,
Plaintiffs-Appellants,
v.
Paul L. GLOVER, William Carpenter, John Broderick, John
Johnson, individually and in their capacities as Trustees of
the Chicago Truck Drivers, Helpers & Warehouse Workers Union
(Independent) Pension Fund, and, the Chicago Truck Drivers,
Helpers and Warehouse Workers Union (Independent) Pension
Fund, jointly and severally, Defendants-Appellees.
 No. 91-2338.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 18, 1992.
Decided Sept. 22, 1992.
 
 Leonard R. Kofkin, Fagel & Haber, Chicago, Ill., Patrick A. Moran (argued), Terri L. North, Simpson & Moran, Birmingham, Mich., for plaintiff-appellant.
 Vincent D. Pinelli (argued), Edward J. Burke, Mary P. Burns, Burke, Burns, Ellison & Pinelli, Ramon Martinez, Jr., Banta, Cox & Hennessy, Chicago, Ill., James J. Flynn, Arlington Heights, Ill., George P. Lynch, Susan G. Feibus, Kane, Obbish, Propes & Garippo, Chicago, Ill., for defendants-appellees.
 Before POSNER and KANNE, Circuit Judges, and VAN SICKLE, Senior District Judge.*
 KANNE, Circuit Judge.
 
 
 1
 The Mason and Dixon Lines, Inc., Central Transport, Inc., and Centra, Inc., brought this action against Paul Glover, William Carpenter, John Broderick, and John Johnson individually and in their capacity as trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund ("the Fund"). In Count I of their complaint, the plaintiffs claimed that the defendants breached an oral agreement to settle a lawsuit brought by the Fund to impose withdrawal liability on the plaintiffs. The plaintiffs' complaint also sought specific performance of the oral agreement (Count II) as well as relief based upon promissory estoppel (Count III).
 
 
 2
 At the conclusion of discovery, the defendants moved for summary judgment. They argued principally that the undisputed facts demonstrated that the plaintiffs were aware that Glover, the representative of the Fund during the negotiations, did not have authority to enter into a settlement agreement. The district court agreed and granted summary judgment against plaintiffs and in favor of the defendants on all counts of the plaintiffs' complaint. The plaintiffs appealed the grant of summary judgment.
 
 I.
 
 3
 Until the spring of 1984, Mason & Dixon operated a trucking terminal in Chicago, Illinois. Pursuant to its collective bargaining agreement with the Chicago Truck Drivers, Helpers & Warehouse Workers Union, Mason & Dixon made contributions to the Fund. In the spring of 1984, as a result of a strike by members of the Teamsters Union, Mason & Dixon terminated its operations and laid off employees represented by the Chicago Truck Drivers Union and also discontinued its contributions to the Fund. Shortly thereafter, the Fund assessed withdrawal liability against Mason & Dixon and the other plaintiffs, which it alleged were members of a control group. See 29 U.S.C. § 1301(b)(1). The Fund brought suit to compel payment of the withdrawal liability.
 
 
 4
 In late 1986, Mason & Dixon suggested to the Fund that the withdrawal liability claim could be settled. Mason & Dixon proposed that it would renew its Chicago operation, which would place it under the Union's umbrella collective bargaining agreement. It also proposed that it would enter into a reparticipation agreement with the Fund.
 
 
 5
 In August 1987, representatives of the plaintiffs met with Glover, a trustee of both the Union and the Fund, to discuss the proposed settlement agreement. It is undisputed that Glover told representatives of Mason & Dixon that he would recommend its proposal to the other directors of the Union and Fund. On October 9, 1987, the Union approved the recommendation and signed a collective bargaining agreement with Mason & Dixon.
 
 
 6
 But the negotiations concerning the proposed settlement agreement did not proceed as smoothly. On October 12, 1987, the attorneys representing Mason & Dixon wrote the following letter to the Union:
 
 
 7
 Pursuant to the settlement which was reached in Chicago with regard to the above-captioned litigation, I have enclosed a signed addendum between [Mason & Dixon] and [the Union]. In addition, I have also enclosed a letter seeking reparticipation in the Pension Fund on behalf of Mason & Dixon.
 
 
 8
 Under the terms of our settlement agreement, Mason & Dixon will hire no less than 30% of the number of Union members which were employed prior to the week of April 9, 1984, and that these employees will be participants in the Union's Pension Fund ... It was also agreed that, once the Trustees have voted to allow Mason & Dixon to reparticipate in the Pension Fund, the above-referenced litigation will be dismissed with prejudice and without costs.
 
 
 9
 On October 14, 1987, an attorney representing Mason & Dixon wrote to the trustees of the Fund as follows:
 
 
 10
 As you are no doubt aware, [Mason & Dixon] has executed a collective bargaining agreement with [the Union] effective September 11, 1987. The contract runs through March 31, 1991.
 
 
 11
 Pursuant to Article 16 of the Truckload Division Area Wage Agreement and Paragraph A6 of the Addendum signed by Mason & Dixon, contributions to your pension fund must be made on behalf of bargaining unit drivers employed by Mason & Dixon. Thus, Mason & Dixon hereby advises the Pension Fund that it be allowed to reparticipate in the Pension Fund and that contributions made on behalf of such drivers be accepted.
 
 
 12
 If the execution of any additional documents is necessary, do not hesitate to contact me.
 
 
 13
 On November 12, 1987, Glover responded to the attorney for Mason & Dixon. His letter stated in part:
 
 
 14
 In response to your letter of October 28, 1987 please be advised that the Trustees of [the Pension Fund] met on November 10, 1987. During this meeting the trustees discussed the pending litigation and the request by [Mason & Dixon] to resolve this litigation by entering into a Collective Bargaining Agreement with the Union and begin to reparticipate in the Pension Fund by making contributions to the Fund....
 
 
 15
 The Trustees determined, after a thorough review of the circumstances surrounding the litigation and after receiving recommendations from the Fund's attorneys, to request a dismissal of the pending litigation based upon a written and executed Settlement Agreement between the Fund and the Company [Mason & Dixon] containing the terms of reparticipation, which pursuant to the Fund's attorneys' strong recommendation and advice, should include a bond to guarantee the payment of the assessed withdrawal liability currently owed by the Company in the event the Company were to terminate the operation covered by the Collective Bargaining Agreement recently signed by the Union and the Company or were to reduce this operation to the point where the number of [e]mployees who participate in the Pension Fund under the provisions of this Collective Bargaining Agreement were to fall under the number required by the provisions of ERISA for reparticipation.
 
 
 16
 Accordingly, the Fund's attorneys shall be in touch to finalize the Settlement Agreement and dismiss the litigation.
 
 
 17
 I appreciate your patience in this matter, but trust you understand that all Trustees of the Pension Fund must agree to the settlement of the litigation and the terms of any settlement must satisfy the comfort level of all the Trustees.
 
 
 18
 Please contact me if your have any questions or comments concerning the resolution of this matter.
 
 
 19
 (Emphasis added). Mason & Dixon did not respond to the November 12, 1987 letter. No further meetings or negotiations took place between the parties to resolve the withdrawal liability suit until the summer of 1988.
 
 
 20
 On July 18, 1988, the district court entered summary judgment against Mason & Dixon and in favor of the Pension Fund for withdrawal liability. Mason & Dixon appealed from that judgment.
 
 
 21
 On August 17, 1988, while Mason & Dixon's appeal was pending in this court, the parties met to discuss settlement of the litigation. At that meeting, Mason & Dixon proposed a new, but similar, plan for settling the matter. Under this second proposal, Mason & Dixon would establish a trucking terminal in Illinois and would place 50 owner/operators in the Union for at least three years, enter into a reparticipation agreement with the Fund on behalf of the 50 new employees and would withdraw the appeal that it had taken from the district court's grant of summary judgment. In exchange, the Fund would request that the judgment be vacated and would move to dismiss the withdrawal liability lawsuit.
 
 
 22
 The events of the August 17, 1988 meeting are in dispute. Bechard, of Central Transport, testified that on August 17, 1988, Glover agreed to Mason & Dixon's proposal. Bechard stated that Glover even told him that: "you know, don't worry about it, I made the agreement, it's--you know, it's a done deal, I'm a man of my word, don't worry about it."
 
 
 23
 The parties also met to discuss the settlement on October 8, 1988. Bechard testified that Glover again told him at that meeting that he had authority to enter into a settlement agreement. Frederick Smith, counsel for Mason & Dixon testified that Glover told him in a meeting during "the last quarter of 1988" that he "had the authority to make a deal."
 
 
 24
 On October 6, 1988, Mason & Dixon's attorneys prepared a draft agreement which Mason & Dixon claims confirms an oral settlement agreement with Glover reached on August 17, 1989. The draft agreement, which was never signed by either party, contains a provision which states that the agreement "is not binding until executed by each of the parties and may be revoked by any of the parties until signed by all of the parties." The Trustees rejected the proposed draft in November 1988. Mason & Dixon, however, placed some owner/operators in the Union and began to reparticipate in the Fund by making pension contributions on behalf of the owner/operators, but total employment did not reach 50 owner/operators as the draft agreement required. Mason & Dixon also withdrew its appeal of the judgment imposing withdrawal liability. The Fund, however, did not move to dismiss the withdrawal liability litigation.
 
 
 25
 On June 29, 1989, Mason & Dixon filed this suit against the Fund and its Trustees. Mason & Dixon alleged that in August 1988 the parties had reached an oral settlement agreement with respect to the withdrawal liability. Mason & Dixon claimed that it had performed its obligations under the oral settlement agreement while the plaintiffs had not performed their obligations.
 
 
 26
 On November 30, 1989, this court reversed the entry of summary judgment in favor of the Fund in the withdrawal liability case. See Trustees of Chicago Tr. Drivers P.F. v. Central Transp., 888 F.2d 1161 (7th Cir.1990). We concluded that the time to request arbitration of withdrawal liability had been equitably tolled. Id. at 1165. Mason & Dixon subsequently requested arbitration, and the withdrawal liability case was pending in arbitration when the district court entered summary judgment in this case on May 6, 1991.
 
 II.
 
 27
 We review a grant or denial of summary judgment de novo. Carston v. County of Cook, 962 F.2d 749, 751 (7th Cir.1992); Pro-Eco v. Board of Com'rs of Jay County, Ind., 956 F.2d 635, 637 (7th Cir.1992). Summary judgment is appropriate if we can determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); Carston at 751. In reviewing a grant of summary judgment we "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." Carston at 751 (quoting Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir.1990)).
 
 A.
 
 28
 In granting summary judgment on the plaintiffs' contract claim, the district court reasoned that the plaintiffs were aware in August 1988 that Glover lacked authority to enter into and bind the Fund to the claimed settlement agreement. In fact, Glover had stated in his November 1987 letter that any agreement would require the approval of the other trustees. The district court also noted that in October 1988 attorneys for the parties prepared draft settlement agreements which required execution by the parties but were never signed by the parties. According to the district court, this was controlling evidence that the parties intended only to be bound by written documents and that neither party had agreed to a settlement of the litigation.
 
 
 29
 Before turning to the district court's ruling, we shall examine the authority of the Fund's Trustees. Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., a pension trust agreement providing for more than one fiduciary must provide for joint authority to control and manage the operation and administration of the Plan. See 29 U.S.C. § 1102(a)(1). Where the assets of a fund are held by two or more trustees, the Act also provides that the trustees "shall jointly manage and control the assets of the plan...." 29 U.S.C. § 1105(b)(1)(B).
 
 
 30
 Congress has invoked the common law of trusts to define the general scope of the authority and responsibility of plan trustees. Central States Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985). Under law of trusts, the exercise of joint powers requires the action of all trustees. See Restatement (Second) of Trusts, § 194 (1959); G. Bogert, Law of Trusts & Trustees, § 554 at 93 (1980); Stuart v. Continental Illinois Nat. Bank & Trust Co. of Chicago, 68 Ill.2d 502, 12 Ill.Dec. 248, 257, 369 N.E.2d 1262, 1271 (1977) (a co-trustee cannot exercise a joint power individually); Madden v. University Club of Evanston, 97 Ill.App.3d 330, 52 Ill.Dec. 963, 966, 422 N.E.2d 1172, 1175 (1981). The Trustees may of course delegate authority to an agent to perform certain acts. Bogert § 555 at 112. Because the other trustees of the Fund deny that they delegated authority to Glover to enter into a settlement agreement, the plaintiffs can claim only that Glover had apparent authority to enter into the agreement.
 
 
 31
 An agent may bind his principal through the existence of apparent authority. Bank of North Carolina, N.A. v. Rock Island Bank, 630 F.2d 1243, 1251 (7th Cir.1980). "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." Id. (quoting Crawford Savings & Loan Ass'n v. Dvorak, 40 Ill.App.3d 288, 352 N.E.2d 261, 264 (1976)). Where the principal places an agent in a situation where the agent may be presumed to have authority to act, his principal is estopped against a third party from denying the agent's apparent authority. Rock Island Bank, 630 F.2d at 1251. To determine whether the agent had apparent authority, courts focus on the acts of the principal. See id.; State Sec. Ins. Co. v. Burgos, 145 Ill.2d 423, 164 Ill.Dec. 631, 635, 583 N.E.2d 547, 551 (1991).
 
 
 32
 The plaintiffs accordingly argue that the trustees placed Glover in a position where he apparently had authority to agree to a settlement of the withdrawal litigation. Therefore, they maintain that the trustees are estopped from denying Glover's authority to act on their behalf. See Burgos, 164 Ill.Dec. at 635, 583 N.E.2d at 551. According to the plaintiffs, several representations by Glover establish that he had apparent authority to reach a settlement agreement on behalf of the Fund. They claim that at a meeting between Glover and their representatives in August 1987, Glover told Bechard that he had authority to agree to a settlement.
 
 
 33
 The plaintiffs also refer to a second set of statements by Glover upon which they allegedly relied. Bechard stated that Glover represented on several occasions that the trustees had delegated authority to him to settle the case on behalf of the Fund. Specifically, Bechard stated that on August 27, 1987, Glover informed him that he had the authority to enter into a settlement agreement. Bechard also stated that Glover claimed he had settlement authority on three other dates: October 27, 1987, August 17, 1988, and October 8, 1988. As we noted previously, Smith, counsel for Mason & Dixon, also stated that Glover told him at a meeting during "the last quarter of 1988" that he (Glover) had authority to agree to a settlement. Bechard also testified that on August 17, 1988, Glover told him that "it's a done deal."
 
 
 34
 The district court found that these statements were irrelevant because it ruled that the plaintiffs were aware that Glover lacked authority to settle the case. The district court pointed to Glover's November 12, 1987 letter, which stated that any settlement would have to be approved by the other trustees. The plaintiffs received Glover's letter long before they claim that they reached an oral settlement agreement with him in August, 1988.
 
 
 35
 The defendants argue that the terms of the Trust Agreement and provisions of ERISA did not allow the Trustees to delegate authority to Glover as a matter of law. They cite § 1105(b)(1)(B), which states that trustees "shall jointly manage and control the assets of the plan."
 
 
 36
 The plaintiffs respond that the Trust Agreement established that Glover had apparent authority to act on behalf of the other trustees. The Trust Agreement, which covered the Fund, stated that:
 
 
 37
 Section 4. Notwithstanding anything herein contained, the Trustees shall have the power ...
 
 
 38
 (e) To allocate specific responsibilities, obligations or duties to some, any or all of the Trustees.
 
 
 39
 The plaintiffs insist that the Trust Agreement did permit the Trustees to delegate to Glover the authority to settle the case. Furthermore, 29 U.S.C. § 1105(b)(1)(B) provides in part that: "nothing in this subparagraph (B) shall preclude any agreement, authorized by the trust instrument, allocating specific responsibilities, obligations or duties among trustees ..."
 
 
 40
 The defendants disagree. They rely on a provision of the Trust Agreement which states that: "any majority decision made by the Board of Trustees in compromise or settlement of a claim or controversy" shall be binding. This provision contemplates--but does not require--that any decision to settle a controversy would be based upon the votes of a majority of the Trustees. We agree with the plaintiffs that the Trust Agreement allowed the Trustees to delegate authority to Glover to settle the litigation.
 
 
 41
 The district court also stated that the plaintiffs had a duty to inquire of the other Trustees to determine whether Glover had authority to settle the litigation. But article 4 § 13 of the Trust Agreement provided that:
 
 
 42
 No party dealing with the Trustees shall be obliged ... (b) to see that the terms of this Amended Agreement have been complied with, or (c) to inquire into the necessity or expediency of any act of the trustees.
 
 
 43
 The plaintiffs argue that under this provision they had no duty to determine if Glover had authority to settle the case on behalf of the Fund. Under the plaintiffs' reasoning, when Glover claimed he had authority to settle the litigation, they were entitled to take him at his word. We agree with the plaintiffs that they were not required to ask the other trustees if Glover had authority to settle the case. Any other holding would nullify article 4 § 13, which was designed to allow persons negotiating with the Fund to rely on its agents.
 
 
 44
 But did Glover have apparent authority to settle the litigation? The plaintiffs' arguments that Glover had apparent authority to act on behalf of the trustees are ultimately unpersuasive because there were two efforts to settle the withdrawal liability case. The first effort took place in the fall of 1987; the second during the fall of 1988. As we have noted, the plaintiffs claim that Glover told them on several occasions in 1987 and 1988 that he had authority to settle the case but their complaint claims that they reached a settlement in August, 1988. The plaintiffs can only argue that Glover's statements in August 1987 demonstrate that he had apparent authority to act on behalf of the Fund.
 
 
 45
 There is a fundamental problem with their argument: in November, 1987, Glover made clear in writing that the there could be no settlement until the other Trustees approved any settlement agreement. In August 1988, the plaintiffs could not rely upon Glover's verbal assurances that he could agree to a settlement in light of his prior written statement. We hold that the plaintiffs had notice that Glover lacked authority to agree to a settlement on behalf of the other Trustees. The district court correctly granted summary judgment in favor of the defendants on the oral contract claim.
 
 B.
 
 46
 Mason & Dixon also argues that the district court erred in granting summary judgment in favor of the defendants on the plaintiffs' promissory estoppel claim. "An estoppel arises when one party has made a misleading representation to another party and the other party has reasonably relied to his detriment on that representation." Black v. TIC Investment Corp., 900 F.2d 112, 115 (7th Cir.1990). The plaintiffs claim that they relied to their detriment upon Glover's assurances when they entered into a new collective bargaining agreement with the Union.
 
 
 47
 We conclude that the plaintiffs' promissory estoppel action must fail for the same reason that their contract action failed: they could not reasonably rely on Glover's oral assurances that he had authority to settle the case. Therefore, we need not reach the defendants' argument that equitable principles are inapplicable to ERISA. See Black, 900 F.2d at 114 (holding that estoppel principles are applicable to a single-employer unfunded welfare benefit plan).[1]
 
 III.
 
 48
 We AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, is sitting by designation
 
 
 [1]
 The Fund and the trustees also argue that this entire action is preempted by ERISA. But many courts including this court have recognized the validity of equitable claims. See Black, 900 F.2d at 115. Because the district court did not reach the defendants' preemption argument, we will not address it